MAYOR AND ALDERMEN OF CITY OF VICKSBURG *v.* HARRAL-
SON*.

(En Banc. Nov. 17, 1924.)

[101 So. 713.   No. 24238.]

1. MUNICIPAL CORPORATIONS. *City's installation of bumper at street
   intersection held negligence.*

   City has no right to place in its street, for purpose of warning
   drivers of danger of street intersection, "bumper" constituting
   a dangerous device or obstruction which an automobile driver,
   even in use of ordinary care, may not see, and by which a driver,
   who has no knowledge thereof, or who through momentary for-
   getfulness, or distraction of attention elsewhere, does not stop
   or reduce speed of car, is injured, though driving at a reasonable
   rate of speed, and installation thereof is negligence.

2. MUNICIPAL CORPORATIONS. *Automobile driver may assume street is
   reasonably safe.*

   Automobile driver may assume that street is reasonably safe for
   driver, and is not required to use extraordinary care.

3. MUNICIPAL CORPORATIONS. *Federal government's use of bumper not
   conclusive as to reasonableness of bumper installed by city.*

   Use by United States government of bumpers, consisting of gravel
   elevations, in National Park to warn automobile drivers of dan-
   gers, *held* not conclusive as to reasonableness of bumper in-
   stalled by city at street intersection.

   ANDERSON and ETHRIDGE, JJ., dissenting.

---

*Headnotes 1.   Municipal Corporations, 28 Cyc, pp. 1358, 1359, 1366.
2.   Municipal Corporations, 28 Cyc, pp. 1420, 1427;   3.   Municipal Cor-
porations, 28 Cyc, p. 1366.

APPEAL from circuit court of Warren county.
HON. E. L. BRIEN, Judge.

Action by Dr. H. H. Harralson against the mayor and
aldermen of the city of Vicksburg. Judgment for plain-
tiff, and defendants appeal. Affirmed.

*Anderson, Vollor & Kelly,* for appellant.

In the regular course of the business affairs of the city of Vicksburg, the mayor and aldermen of said city deemed it necessary for the public safety, after Mulvihill and Drummond streets were to be paved, to install on Drummond street fifty-four feet south of the southeast corner of Drummond and Mulvihill streets, a "bumper," in order to warn automobile drivers of the dangers at this street intersection. This act of the city officials was done in the exercise of a governmental duty for which the city cannot be made liable for any damage resulting directly and proximately from placing the bumper in Drummond street, which was regarded by the officials as a dangerous point. *Arronson* v. *New Haven,* 12 A. L. R. 328.

In the exercise of this governmental duty to safeguard life and property, the proper authorities had the right to adopt some plan to warn automobile drivers of the dangerous condition at this street corner, and it cannot be reasonably argued that the placing of this slight obstruction in this street for the praiseworthy purpose of protecting human life and human limbs is negligence for which the city can be held liable in damages.

The appellant contends here as we did in the court below that the placing of the bumper in Drummond street as a means of public safety did not constitute a nuisance for which the city would be liable, and that upon the facts adduced upon the trial the appellant instead of the appellee was entitled to a directed verdict from the court. *Messenger* v. *Bridgeport,* 31 Can. S. C. 379; Affirmed in 33 Can. N. S. 291.

The right of the public to use a street is subject to such reasonable and necessary limitations as the city may impose upon it, and as long as an obstruction placed upon a street is temporary and reasonable in its character, and is intended for public safety and convenience, its

existence furnishes no cause for complaint. 44 Am. Rep. 339. As a general rule slight obstructions in a street or highway for the sake of general convenience and business does not render a municipal corporation liable for a resulting injury. 47 Atl. 161. And where obstructions placed in a street constitute a necessary incident to the use of the street for the purpose authorized by law, or where they are intended for the protection of the general traveling public, they do not constitute a nuisance. *Seibert* v. *Missouri R. R. Co.*, 188 Mo. 657; 70 L. R. A. 72.

A pavement may have become uneven from use, or that bricks therein may have become lose or misplaced by the action of the elements, so that persons are liable to stumble or be otherwise inconvenienced in passing, does not necessarily involve the municipality in liability for resulting injury, so long as the defect can be readily discovered and easily avoided by persons exercising due care, or provided the defect be of such nature as not of itself to be dangerous to persons using the walk. *Gosport* v. *Evans*, 112 Ind. 133, 13 N. E. 256, 12 L. R. A. (N. S.) 916.

The decision of the city authorities on the question is conclusive and cannot be reviewed by the courts. *Connelly* v. *City of St. Paul*, 72 N. W. P. 1073. The city, when it assumes to construct sidewalks, engages to do so in a reasonably safe manner, affording pedestrians reasonably safe conditions of travel; they at the time using due caution. The rule is fairly stated in Dill. Mun. Corp., sec. 1019.

The defendant gave notice to the plaintiff in the court below, under the general issue, that it would undertake to prove, and would prove, that bumpers were used in the Vicksburg National Military Park around Vicksburg; that they were used on the highways between Vicksburg and Jackson, and on other highways in Mississippi; that they were used on highways in other states. The plain-

tiff in the court below moved to strike from the notice thus given such parts of the notice that referred to highways outside of the city of Vicksburg. The court sustained the motion to strike out, and under this ruling the defendant in the court below was denied the opportunity to show that bumpers were used outside of Vicksburg on public highways and on public highways in other states of the Union. This was a material inquiry and necessary for the defense to show that the plan adopted by the Vicksburg authorities was a proper plan, a reasonable plan, and one that prudent men might approve, and if for no other reason the action of the court in not permitting the defendant in the court below to make this proof, this case should be reversed, and a new trial awarded. *Gould* v. *Topeka,* 32 Kan. 485, 49 Am. Rep. 496, 4 Pac. 822; *Madison* v. *Ross,* 3 Ind. 236, 54 Am. Dec. 481.

The city is not bound to maintain an even or proper grade of its streets and pavements. *Gosport* v. *Evans,* 112 Ind. 123, 13 N. E. 256; *Blythe* v. *Waterville,* 57 Minn. 115; *Dubois* v. *Kingston,* 102 N. Y. 219, 55 Am. Rep. 804, 6 N. E. 273; *Teager* v. *Flemingburg,* 53 L. R. A. 791. It was a grievous error in the court below, under the testimony of Dr. Harralson and the testimony in reference to the photographs, to give a peremptory instruction to find for the plaintiff. Dr. Harralson's testimony shows that he was not exercising the ordinary care and caution that he should have exercised in driving his automobile. The best case that can be made out of his testimony is that he did not see the warning sign or the bumper itself. *Lauson* v. *Fon du Lac,* 25 R. L. A. (N. S.) 40; *Raymond* v. *Sauk County,* L. R. A. 1913F. 425. Under such facts this alleged accident could not have happened if Dr. Harralson had exercised the slightest care in driving his automobile and no recovery can be had. *Siebert* v. *Mo. Pac. R. R. Co.,* 7 L. R. A. 72; sec. 133, Berry on Automobiles; *West Construction Co.* v. *White,* 130 Tenn. 520.

In the case of *Arronson* v. *New Haven,* 94 Conn. 690, 12 A. L. R. 328, and note; 110 Atl. 872, the court held that "the mere placing by a city of so-called silent policeman at the intersection of two streets without fastening or anchoring it, and with knowledge that it is liable to be displaced so as to become a dangerous obstruction to traffic is not negligence which will render the city liable for injury through a vehicle colliding with it after it has been displaced." 12 L. R. A. note p. 339.

The court ruled that because the jurisdiction of the National Military Park road had been ceded by the state to the United States, and because the city had no jurisdiction over the park roads, that no proof of the use of bumpers could be made by the defendant. No reason was assigned by the court for the exclusion of testimony that bumpers were used on other roads in the state and in other states in the Union. We are unable to understand why the ceding of the jurisdiction from the state to the United States should preclude such testimony from consideration. Testimony of the use of bumpers in the National Military Park road was offered in the first place to show that Dr. Harralson was familiar with their use and that he had prior to the time of his alleged injury experience in using them, and that he knew how to pass over them with safety, and in the second place to show that the use of bumpers on Drummond street was not a jumped up plan of the city officials, and that it was not of their own make, but that it was a general plan adopted by prudent men in charge of highways, not alone in the National Military Park, but on highways in Mississippi and in other states in the Union.

For the reasons assigned in the decisions of the courts above cited, the testimony offered should not have been excluded by the court because it was essential, material and competent for the defense in this case.

*Brunini & Hirsch* and *Jas. D. Thames,* for appellee.

The city simply took the law into its own hands. It was a deliberate act designed to punish people physically, or to damage their motor vehicles, should they for any reason disregard the presence of the bumper. As we shall presently see this was holding the citizens using the street to a greater degree of care than the law imposed. Appellant contends that the city in putting this obstruction in Drummond street was exercising a governmental function, and exercising a governmental function it was not liable for the injury inflicted upon Dr. Harralson. Reasoning along the same line, it could put an automatic gun on the street and with a certain mechanism shoot anyone who approached a crossing at a greater rate of speed than, say fifteen miles an hour. Appellant relies upon the case of *Aaronson* v. *New Haven,* 94 Conn. 690, 110 Atl. 872, and also reported in 12 A. R. L. 328. This Connecticut case has no application to the case at bar for the very simple reason that Mississippi has chosen to follow a different line of authority. "The general doctrine of the American courts, as we shall presently see, in respect of municipal corporations proper, has been to hold them civilly liable for injuries from defective streets." 4 Dill. on Mun. Corp. (5 Ed.), 2951.

"In other jurisdictions it has been held that such duties (to keep the streets of municipality in repair and safe for travel), are corporate and the municipal corporation is liable for the neglect thereof." 28 Cyc. 1341. In support of this last text we find almost if not every state in the Union, including Mississippi and the supreme court of the United States, with the exception of the few states which we have already enumerated as holding that the duties to keep streets in repair and safe for travel is a governmental and not a corporate function.

Now can any one believe that appellant was serious in the foregoing statement, but even if it did announce cor-

rect principles of law, we might ask, "What plan was adopted here where reasonable minds might differ?" Doesn't this record show that the city and everybody else were of one mind, that the plan adopted was a dangerous one, and then to say that the decision of the city authorities is conclusive and cannot be reviewed by the courts is utter nonsense. In support of this contention the case of *Connelly* v. *City of St. Paul* (Minn.), 72 N. W. 1073, is cited. The correct style of the case is *Colman* v. *City of St. Paul.* In that case it was claimed that the city was negligent in constructing a crossing with too steep a slope. The court further said, "But if, in adopting the plan, there is such gross error of judgment as to show that in fact no intelligent judgment at all was ever exercised, as to where there were no obstacles to be overcome which would furnish any reason or excuse for the dangerous condition complained of, the city is liable for constructing and maintaining the sidewalk on such defective plan." The case of *Bell* v. *West Point*, 51 Miss. 262, is a polar star of Mississippi's position, showing that the duty to repair and keep in safe condition the municipal streets is a corporate and not a governmental function. *Higginbottom* v. *Village of Burnsville*, 113 Miss. 219; *M. M. Nesbitt* v. *City of Greenville*, 69 Miss. 23; *City of Natchez* v. *Catherine H. S. Shields*, 74 Miss. 871; *City of Meridian* v. *John F. McBeath*, 80 Miss. 485.

"Knowledge of the defective condition of a street does not necessarily preclude a plaintiff from a recovery for an injury sustained therefrom, as it is a question for the jury whether when using the street he exercised ordinary diligence commensurate with his knowledge." *James S. Birdsong* v. *Town of Mendenhall*, 97 Miss. 544. 'A traveler who uses a street in the ordinary way is not guilty of a failure to exercise proper care and diligence in driving over a defective part of the street, even though he knows it is not in general good condition, but does not

know of a hole therein which is covered with water and mud.'' *T. F. Saxon* v. *Town of Houlka*, 107 Miss. 161; *Jordan* v. *City of Lexington*, 97 So. 758; *Graham* v. *City of Charlotte* (N. C.), 120 S. E. 466; *City of Vandalia* v. *Ropp*, 39 Ill. App. 344; *City of Pueblo* v. *Smith*, 3 Col. App. 386, 33 Pac. 685; *City of Montgomery* v. *Ross* (Ala.), 70 So. 634; *Redford* v. *City of Wolburn*, 57 N. E. 1008, 176 Mass. 520; *Collett* v. *City of New York*, 64 N. Y. S. 693, 51 App. Div. 394; *Henson* v. *Kansas City* (Mo.), 218 S. W. 13; *Indianapolis & Cincinnati Traction Co.* v. *Montford* (Ind.), 139 N. E. 677; *Boush* v. *City of Norfolk* (Va.) 117 S. E. 867; *City Council of City of Augusta* v. *Jackson*, 93 S. E. 304, 20 Ga. App. 710; 28 Cyc. 1386; *Carver* v. *Jackson*, 82 Miss. 583, 28 Cyc. 1419; 28 Cyc. 1427.

Appellant contends that the plan was faulty; that is, the plan of the bumper, and that under the authority, the city was exercising a legislative or *quasi*-judicial office when it adopted the plan of the bumper. Of course that rule can have no bearing on the facts in this case even though such was the law of this state, for the reason that the city knew that the plan was one designed to hurt, and in fact, there was no particular plan adopted as the evidence conclusively shows. 28 Cyc. 1370.

The case at bar is similar to the infliction of injuries by assault, and in actions for injuries caused by assault it is no defense that the plaintiff contributed to the injury, and the reason of the rule is: ''There cannot be contributory negligence as to whether the defendant has been guilty of negligence to which the plaintiff's negligence could contribute, and assault and battery is not negligence. The former is intentional and the latter is unintentional. *Ruther* v. *Foy*, 46 Iowa, 132; Assault and Battery, 5 C. J. 644; Torts, 38 Cyc. 534.

Argued orally by *W. J. Vollor*, for appellant, and *John Brunini*, for appellee.

Holden, J., delivered the opinion of the court.

This is an appeal by the city of Vicksburg from a judgment against it for fifteen hundred dollars in favor of Dr. H. H. Harralson as damages for personal injuries received by him on account of being "bumped" in his automobile whe nhe was driving over a "bumper" placed in Drummond street by the city authorities for the purpose of warning auto drivers of the danger of a street intersection. There was a peremptory instruction given in the lower court to find for the plaintiff as to liability, and the question of amount of damages, together with the question of contributory negligence with reference to diminishment of damages, was submitted to the jury for their decision.

The statement of the case as appears in the appellant's brief seems to be correct, and we shall adopt it, and here quote it as follows:

"This suit was instituted by Dr. H. H. Harralson against the mayor and aldermen of the city of Vicksburg in the circuit court of Warren county, Miss., to recover damages for alleged personal injuries received by him in driving his automobile over what is known as a 'bumper,' which was built into Drummond street fifty-four feet south of the corner of Mulvihill and Drummond streets, in the city of Vicksburg. In paving both of the streets named, the mayor and aldermen caused to be constructed two 'bumpers,' one of which was built into the pavement on Mulvihill street which intersects Drummond street fifty-four feet east from the eastern line of Drummond street, and the other 'bumper' was built into Drummond street fifty-four feet south of the southeast corner of Mulvihill and Drummond streets. The original 'bumpers' proved unsatisfactory, and were regarded dangerous and, upon complaint being made by citizens, the bumper on Mulvihill street was removed, and a new bumper was built into Drummond street, as above stated.

"The second bumper on Drummond street, which is the bumper complained of, was constructed on August 22, 1923, six days prior to Dr. Harralson's accident, and its dimensions were five inches high in the center, and five feet wide at its base, and it was rounded from the highest point in the center on each side to a point level with the surface of the street.

"The bumper was placed or installed on Drummond street fifty-four feet south of the southeast corner of Drummond and Mulvihill streets in order to warn automobile divers of the danger of collisions at this street intersection.

"The appellee, Dr. Harralson, has lived in the locality where this bumper was built for about two years, and until June, 1923, he lived a short distance south of and in the same block where the bumper was located. On August 28, 1923, about 9 o'clock in the morning, he was driving north on Drummond street to his office in the city of Vicksburg, and he claims that, without knowledge of the existence of the bumper in the street, and without seeing it or the sign marked 'bumper' near the east curbing of the street, and fifty-four feet south of where the bumper was located, he drove over the bumper, and was forcibly thrown against the steering wheel of his car, thereby causing a dilatation of his heart. The evidence discloses that Dr. Harralson had some knowledge of the condition of the street at the point where the injury occurred, and that he had passed the point where this and the original bumper was built several times prior to August 28, 1923, the date of his alleged injuries."

It is conclusively shown from the record that Dr. Harralson had some knowledge of the two bumpers placed in the streets some time before the second bumper on Drummond street, which caused the injury, was installed, but he was under the impression the bumpers had been removed when he drove down the street on the morning

he was hurt. He testified that he was driving in a reasonable and careful manner, at a lawful rate of speed, and that he did not see the bumper until he was within a few feet of it and was unable then, to stop his car or reduce his speed so as to prevent being injured as he went over it. He said that he did not see the signboard some fifty feet from the bumper, although he was looking and operating his car with due care.

The sign which was placed on the grassy part of the sidewalk contained the word "bumper," and this was the only warning to him, unless he had seen the bumper itself in time to have checked his car and avoided the bump which seriously injured him. The record discloses that Dr. Harralson had some general information with reference to bumpers being used in the National Park, and perhaps upon some other highways, but he did not know of the particular bumper here involved until he had run over it.

The record shows, and it is admitted in the argument of the appelant, that the device called a "bumper" was purposely placed in the street to bump and injure persons traveling over it in automobiles, unless they saw it in time and slowed down to such an extent that the car would go over it without bumping the occupants therein. It is shown to have been a dangerous contrivance or obstruction intentionally placed in the street by the city, and the record indisputably reflects the fact that on account of the deceptive nature of the device most any driver of a car would likely go over it without seeing it, unless he was especially looking for it, or had his attention called to it in some way. It was dangerous to go over, even at a lawful rate of speed, and is admitted to be exceedingly dangerous when crossing it at an excessive rate of speed.

The appellant, city of Vicksburg, contends there is no liability in the case because the city, in its governmental capacity, had the right to install the bumper as a matter

of public safety in order to warn automobile drivers of the danger of approaching the street intersection; that the method of warning against the danger at a street intersection is a reasonable one; and that no person driving a car over the bumper would be injured if they saw it, which they should do, and reduced the speed to such an extent as to eliminate the bump or jolt in crossing over.

It is further contended the city had the right to obstruct its street with such a device, if done in order to prevent the danger of injury to persons at the intersection of streets, and that bumpers are placed in the National Park and upon other highways of which the appellee should, and did, have knowledge, and that the appellee knew, or ought to have known, of this particular bumper on Drummond street, and that it was his sole negligence in failing to observe it and reduce his speed in crossing it that caused the personal injuries complained of in the case.

We do not think there was any question of fact to be passed upon by the jury because there is no material conflict in the evidence, and therefore the peremptory instruction on liability given for the plaintiff was proper, or else a peremptory instruction should have been given in favor of the city. The amount of damages and the diminishment, if any, on account of contributory negligence, was submitted to the jury.

We are unable to agree with the contention of the appellant. We do not think the city had the right to place a dangerous device or obstruction in its street making it unsafe, and which would likely injure persons traveling in automobiles over it. The purpose of the bumper was to bump and injure persons in automobiles crossing over it, even at a lawful rate of speed, who might fail to see it or become aware of its presence until they were so close that they would be unable to reduce the speed and prevent an injury when crossing it.

A driver of a car might be using reasonable care and not see the device, unless he was looking for it, because

his attention might be reasonably and necessarily occupied with reference to other objects, vehicles, or conditions at that point; or he might in an ungarded moment of forgetfulness, even though he had previous knowledge that the bumper was located at that place, run over it, and be precipitated and bumped in his car, which jolt might under some circumstances of high speed cause great bodily harm and serious consequences.

This scheme or method of warning drivers appears to us to be unreasonable, too drastic, and perilous for the purpose intended. The method of injuring one person in order to prevent danger to another is wrong in principle, as we see it, and is not such a reasonable regulation for the public safety as is warranted under the law, but is negligence. Creating one danger to prevent another is not in accord with the public safety—the very thing involved and desired. 28 Cyc. 1358, 1359, 1366, 1419B, 1422C, 1427; 13 R. C. L., section 313, p. 384.

It is indeed commendable for the city authorities to adopt means and methods of preventing injuries to persons by the operation of automobiles, and, when such means adopted are reasonable and commensurate with the evil sought to be remedied, they should be upheld; and we think there are divers ways and methods of preventing the dangers incident to the street intersection in this case besides installing a contraption to injure the the reasonably careful driver who innocently, through momentary forgetfulness, or on account of his attention being directed to some other proper and incidental object or circumstance at the time, runs over the bumper before he has a chance to reduce the speed of his car. The driver may assume the street is reasonably safe for travel, and is not required to use extraordinary care.

It is argued considerably by the appellant that since the National Park has bumpers in its roadways, and that there are other highways upon which bumpers have been

installed, this device installed by the city on this paved street ought to be considered as a, reasonable precaution for the public safety at the street intersection.   The character of the bumpers in the National Park, which appear to be gravel elevations, possibly might be seen and appreciated by the driver quite a 'distance, but not so likely on a paved street which is smooth and inviting to the traveler.

However, the fact that the government, has adopted bumpers in the National Park does not of itself convince us that such a device is permissible, and that a person injured in crossing them would not have a cause of action if a municipality had installed the bumpers.   The judgment of government officials with reference to what device they should place at the streets for the public safety is not infallible.   Public officials often in good faith, though negligently, mistake the proper method to be used in protecting the public from dangers.

It is our judgment the public authorities have in no case a right to unreasonably install one unguarded danger to the public in order to prevent another danger to the public, and that seems to us to have been exactly what was done by the city of Vicksburg in the case before us.

In view of these conclusions, the judgment of the lower court is affirmed.

*Affirmed.*


Anderson, J., (dissenting.)

I dissent from the majority opinion.   In my judgment the question of liability was one for the jury.  By the construction of the bumper appellant sought to diminish the dangers at the intersection of Drummond and Mulvihill streets.   The question was whether the bumper increased the dangers instead of accomplishing its purpose.   If the dangers were diminished, or if they were not increased, there was no liability.   On, the other hand, if the dangers

were increased, there was liability. There was ample evidence tending to show that the bumper decreased the dangers of the crossing. The bumper at its peak was only five inches thick and had a base of five feet. The surface was smooth and oval.

The intersection of Drummond and Mulvihill streets was what is known as a blind crossing; it was a dangerous crossing. The city proved by several witnesses that a person driving in an automobile at a reasonable speed, keeping a lookout, could pass over the bumper without inconvenience or injury.

ETHRIDGE, J., joins in this dissent.