667 So.2d 1315 (1995)
Francis KING, Individually and as Administratrix of the Estate of Mary Beth King, Deceased,
v.
CITY OF JACKSON, Mississippi.
No. 92-CA-00866-SCT.
Supreme Court of Mississippi.
November 30, 1995.
Rehearing Denied February 15, 1996.
*1316 David T. Cobb, Wayne E. Ferrell, Jr., Jackson, for Appellant.
Hugh W. Tedder, Jr., Terry Wallace, Jackson, for Appellee.
Before HAWKINS, C.J., and ROBERTS and SMITH, JJ.
HAWKINS, Chief Justice, for the Court:
Mary Beth King was a passenger in a vehicle proceeding around a dangerous curve on Colonial Circle in Jackson, Mississippi. The vehicle left the roadway, and ran into an open concrete ditch. As a result of this accident, Mary Beth King received fatal injuries. Francis King, individually and on behalf of Mary Beth King's Estate, sued the City of Jackson, asserting that the City had a duty to warn of this dangerous curve, but did not meet its duty to provide an adequate warning. Further, during the preceding eighteen months, there were no less than six previous accidents at this site. The Circuit Court of the First Judicial District of Hinds County granted summary judgment for the City of Jackson on the basis of sovereign immunity. King has appealed.

LAW
Two issues confront us on this appeal: whether the placement of warning signs on this dangerous portion of the street was a proprietary or governmental function; and if the latter, whether sovereign immunity applies to the City.
Whether a city function is proprietary or governmental is a matter of public policy. [T]his court is committed to the doctrine that the public policy of the state must be found in its constitution and statutes, and when they have not directly spoken, then in the decisions of the courts and the constant practice of the government officials.
Anderson v. Jackson Municipal Airport Authority, 419 So.2d 1010, 1023 (Miss. 1982), quoting Cappaert v. Junker, 413 So.2d 378, 380 (Miss. 1982).
Decisions of this Court have declared that as a matter of public policy the decision of a city whether to place traffic or warning signs is a governmental function, not proprietary. Nathaniel v. City of Moss Point, 385 So.2d 599, 601 (Miss. 1980); Wall v. City of Gulfport, 252 So.2d 891, 893 (Miss. 1971).
Since the action of the City in placement of the warning signs was a governmental function, the remaining question is whether the defense of sovereign immunity is applicable. Finding the City is entitled to sovereign immunity, we affirm. Presley v. Mississippi State Highway Comm., 608 So.2d 1288, 1291 (Miss. 1992); Coplin v. Francis, 631 So.2d 752, 755 (Miss. 1994); Robinson v. Stewart, 655 So.2d 866, 867 (Miss. 1995).
AFFIRMED.
DAN M. LEE and PRATHER, P.JJ., and ROBERTS and SMITH, JJ., concur.
*1317 BANKS, J., dissents with separate written opinion joined by SULLIVAN, PITTMAN and McRAE, JJ.
McRAE, J., dissents with separate written opinion joined in part by BANKS, J.
BANKS, Justice, dissenting:
Because I believe that the majority misperceives the thrust of appellant's claim and, therefore, reaches the wrong result, I dissent. In short, this is not a claim about traffic devices at all. It is a claim concerning the failure to warn of a dangerous condition created and maintained by the city in the exercise of its governmental function. It follows that summary judgment was inappropriately granted and should be reversed.
In its motion for summary judgment, the city quoted King's answer to an interrogatory as to the nature of the city's negligence as follows:
The plaintiff contends that the City of Jackson was negligent in the following respects: (1) failing to properly warn approaching motorists of the dangerous curve; (2) failing to provide adequate lighting in the area of the dangerous curve; (4) failing to provide an adequate shoulder at the site of the dangerous curve; (5) failing to warn approaching motorists of the open concrete ditch; (6) failing to provide adequate guards to prevent vehicles from driving into the open concrete ditch; (7) failing to provide adequate lighting at the site of the concrete ditch.
From this platform the city leaped to our case law dealing with the question of whether the installation of a traffic control device is a matter of governmental discretion, the exercise of which is immunized from liability. Wall v. City of Gulfport, 252 So.2d 891 (Miss. 1971); Nathaniel v. City of Moss Point, 385 So.2d 599 (Miss. 1980). To my mind, not a single alleged instance of negligence necessarily involves a traffic control device. Put simply, the fact that traffic control devices promote safety on the streets does not mean that every safety measure required in the exercise of reasonable care is a traffic device. Additionally, while Wall held that the decision to place a stop sign is governmental, that decision also turned on the court's conclusion that there was no evidence that the intersection in question was unreasonably dangerous without a stop sign. 252 So.2d at 891. The Nathaniel Court declined to address whether the failure to replace a stop sign was governmental or proprietary and instead rendered judgment based on a conclusion that absence of a stop sign bore no causal relationship to the accident. 385 So.2d at 603. Reliance on these cases by the city and the majority is misplaced.
Clearly, the city is amenable to liability in the exercise of its proprietary functions. Thomas v. Hilburn, 654 So.2d 898 (Miss. 1995); City of Vicksburg v. Harralson, 136 Miss. 872, 101 So. 713 (1924). The design, construction and maintenance of streets and ditches are clearly proprietary functions. Thomas, 654 So.2d at 901; White v. City of Tupelo, 462 So.2d 707, 708-709 (Miss. 1985). Where, in the exercise of this function, the city creates an unreasonably dangerous condition, its duty to correct or, in the very least, adequately warn is no different from that of any other citizen. Tucker v. City of Okolona, 227 So.2d 475 (Miss. 1969). Whether it chooses to meet this duty through the use of "traffic control devices" or in some other manner  better lighting, adequate shoulders or guardrails as suggested by the plaintiff, for example  is of no moment.
Besides its contentions concerning the lack of a duty to erect "traffic control" devices, the city produced an affidavit to the effect that the existing traffic control devices comported with engineering standards and that the accident would not have occurred but for the negligence of the driver. There was no counter affidavit. The trial court issued no opinion, however, and it is, therefore, not possible to determine whether this affidavit was relied upon in any manner. It should suffice to say that the affidavit does not entitle the city to judgment. Compliance with engineering standards for traffic control does not necessarily equate to reasonable care under the circumstances and the issue of driver negligence would be considered by a jury, if necessary, under our joint-and-several liability doctrine. D & W Jones, Inc. v. Collier, 372 So.2d 288, 294 (Miss. 1979) (Where the negligence of more than one *1318 actor contributes to the cause of the injury, they are jointly and severally liable to the injured.); Miss. Code Ann. § 85-5-7 (1991).
For the foregoing reasons the grant of summary judgment by the circuit court should be reversed and this matter should be remanded to that court for further proceedings.
SULLIVAN, PITTMAN and McRAE, JJ., join this opinion.
McRAE, Justice, dissenting:
I must respectfully dissent from the majority as they incorrectly conclude that a city's failure to warn of a known dangerous condition is governed by Nathaniel v. City of Moss Point, 385 So.2d 599 (Miss. 1980). The failure to adequately warn the public of a dangerous condition in the road is instead a proprietary function of the municipality. Moreover, the record demonstrates there was sufficient evidence to create a factual dispute as to whether the sharp curve adjacent to a deep ravine constituted a dangerous condition. Because the existence of a dangerous condition and whether a warning sign would have constituted proper maintenance of the road are issues which must be resolved by a jury, the trial court erroneously granted summary judgment.
In Nathaniel, this Court stated that the maintenance and repair of streets in Mississippi was a proprietary function, but distinguished the initial placement of traffic control devices such as stop signs or traffic lights as being a governmental function. 385 So.2d at 601. The complaint in the case at hand presents the issue of a municipality's duty to warn of known dangerous conditions. The failure to warn of a known dangerous or unusual condition in the road, or within reasonable proximity of the road such that it presents a likelihood of injury to those using the road in an ordinary manner, falls in the category of maintaining and repairing defective conditions of the road. Chinevere v. Cullman County, 503 So.2d 841, 842 (Ala. 1987); Gordon v. City of West Palm Beach, 321 So.2d 78, 80 (Fla. 1975); Mayor and City Council of Baltimore v. Seidel, 44 Md. App. 465, 409 A.2d 747, 751 (1980); City of Pasadena v. Freeman, 731 S.W.2d 590, 593-94 (Tex. 1987); see generally McQuillan, Municipal Corporations, § 54.90 (3d. ed. Cum Supp. 1993).
The maintenance and repair of streets constitutes a proprietary or corporate function for which a municipality may be held liable if done negligently. Nathaniel, 385 So.2d at 601; see Anderson v. Jackson Mun. Airport Auth., 419 So.2d 1010, 1014-15 n. 2 (Miss. 1982) (creation of dangerous situation regarding trees near sidewalks, streets, or neutral areas); White v. Thomason, 310 So.2d 914, 916 (Miss. 1975) (maintenance of traffic lights); Tucker v. City of Okolona, 227 So.2d 475, 476 (Miss. 1969) (same); Bishop v. City of Meridian, 223 Miss. 703, 79 So.2d 221 (1955) (maintenance of streets); City of Vicksburg v. Harralson, 136 Miss. 872, 101 So. 713 (1924) (maintenance of "bumpers' in streets).
In reaching its conclusion that the placement of traffic control devices was a governmental function, the Nathaniel Court determined that the city's failure to place a stop sign at an intersection did not necessarily render the intersection more dangerous than any other intersection used by persons exercising ordinary care and caution. 385 So.2d at 602. To the contrary, the existence of the deep ravine flowing next to an extremely sharp curve in the roadway created a factual dispute as to whether the roadway in this case was uncommonly dangerous. It was alleged that in the absence of a warning sign, the sharp curve would naturally lead an automobile into the deep ravine adjacent to the roadway even though a driver used ordinary care in attempting to negotiate the curve. Six different accident reports involving the same curve evidenced a condition in the road so unusual that a driver using ordinary care might still fail to negotiate it. The decision to place a sign warning of such a condition is fundamentally different when the condition is dangerous to the driver using ordinary care. See City of Jackson v. Locklar, 431 So.2d 475, 479 (Miss. 1983) ("A municipality is under the duty to exercise reasonable care to keep its streets reasonably safe for those using them with reasonable care"); see also Bishop v. City of Meridian, 223 Miss. 703, *1319 711, 79 So.2d 221, 223 (1955) (city is liable in tort for negligent failure to maintain streets "in such condition as not to endanger the safety of the public in the proper use thereof").
In addition to showing the existence of a defect, a "plaintiff must go further and show that the city had actual or constructive knowledge of the defect." Locklar, 431 So.2d at 480. With the accident reports offered by King, she successfully presented evidence sufficient to create a factual dispute as to the City's knowledge of the dangerous condition. See White, 310 So.2d at 917 (proof of constructive notice is sufficient to present jury question as to city's knowledge of defect).
Where a municipality has notice of a dangerous defect, remedying such a condition is more akin to the City's proprietary function of maintaining its streets in a reasonably safe condition as opposed to its governmental function of controlling traffic flow. Consequently, the City of Jackson should not enjoy sovereign immunity from the present claim. Whether the street was properly maintained without a warning sign and whether a warning sign would have cured this unusually hazardous condition are issues which should be resolved by a jury. Accordingly, I dissent.
BANKS, J., joins this opinion in part.