462 So.2d 707 (1984)
Haskell Odell WHITE, et al.
v.
CITY OF TUPELO, Mississippi, et al.
No. 54523.
Supreme Court of Mississippi.
December 19, 1984.
Rehearing Denied February 13, 1985.
John Booth Farese, Farese, Farese & Farese, Ashland, Roy O. Parker, Tupelo, for appellant.
Frank A. Riley, Pat Caldwell, Riley & Weir, Tupelo, for appellee.
Before PATTERSON, C.J., and DAN M. LEE and ROBERTSON, JJ.
PATTERSON, Chief Justice, for the Court:
On October 13, 1980, an automobile owned by Ellen Ratliff and driven by Haskell White collided with a fire truck at the intersection of Highway 45 and Pinecrest Street in Tupelo. Ratliff was a passenger in the car at the time. In the fire truck, which was allegedly owned by the City of Tupelo, were Tupelo Fire Department Captain Roy Jackson Box and William Estes, a *708 representative of the Belden Volunteer Fire Company, Inc. The record indicates at the time of the crash Box was instructing Estes on the operation of the truck pursuant to an agreement to sell the vehicle to the Belden Volunteer Fire Company, Inc.
Having inflicted serious injuries, the collision resulted in several lawsuits. White filed a complaint against Estes, the City of Tupelo, the Town of Belden, and Tupelo Fire Chief Curtis Sanders for negligence. The City of Tupelo raised the defense of sovereign immunity, and Sanders raised as a defense that this immunity inured to his benefit.
Box sued Estes, White, and Ratliff. Ratliff filed a counterclaim, cross-claim and third party complaint against Sanders, the City of Tupelo, Estes, Box, and the Belden Volunteer Fire Company, Inc. Again, Sanders and the City of Tupelo raised sovereign immunity as a defense.
The suits of White and Box were consolidated for trial. On October 18, 1982, the court conducted a hearing on Sanders' and the City of Tupelo's motions to dismiss.
Afterward, the court concluded, "The actions by the City of Tupelo and its agents which are the basis of this cause of action, were governmental acts, not proprietary, and therefore the motions of the defendants to dismiss should be sustained."
On appeal White and Ratliff assign as error the court's dismissal of the City of Tupelo and Curtis Sanders.
We first address the issue whether the court erred in holding the City of Tupelo immune from suit. We first acknowledge that in Mississippi there have been two significant developments in the area of sovereign immunity in the past two years. First, in Pruett v. City of Rosedale, 421 So.2d 1046 (Miss. 1982), this Court abolished the doctrine of the immunity of the "sovereign," including the state and its local subdivisions. However, the court limited this ruling to causes of action accruing on or after July 1, 1984. Subsequently, the legislature responded by passing Senate Bill No. 2441, Chapter 495, General Laws of Mississippi (Approved May 15, 1984). However, since this cause of action accrued on October 13, 1980, we must analyze pre Pruett decisions to determine whether the lower court properly applied the doctrine of sovereign immunity in this case.
As stated in Nathaniel v. City of Moss Point, 385 So.2d 599, 601 (Miss. 1980), "[A]bsent statutory provisions, there can be no recovery against a municipality based on negligence in the exercise of functions which are essentially governmental in character; however, when acting in a private or a proprietary capacity, it is liable in tort the same as private corporations." Tucker v. City of Okolona, 227 So.2d 475, 476 (Miss. 1969). Thus the issue, simply stated, is whether the city was acting in its private or proprietary capacity, or exercising its governmental functions, at the time of the incident. If the former is correct, the case must be reversed.
Governmental and proprietary functions were distinguished in City of Pass Christian v. Fernandez, 100 Miss. 76, 82, 56 So. 329 (1911):
The public or governmental duties of a city are those given by the state to the city as a part of the state's sovereignty, to be exercised by the city for the benefit of the whole public, living both in and out of the corporate limits. All else is private or corporate duty, and for any negligence on the part of the agents or employees of the municipality in the discharge of any of the private duties of the city the city is liable for all damage just as an individual would be... .
The following are examples of proprietary or corporate functions, to which immunity does not attach:
(1) The supervision of construction of a retaining wall of a mall. Ditta v. City of Clinton, 391 So.2d 627 (Miss. 1980);
(2) The maintenance and operation of traffic control lights. Tucker v. City of Okolona, 227 So.2d 475 (Miss. 1969);
(3) The construction of a sidewalk. City of Ruleville v. Grittman, 250 Miss. 842, 168 So.2d 527 (1964);
*709 (4) The maintenance and repair of streets. Bishop v. City of Meridian, 223 Miss. 703, 79 So.2d 221 (1955);
(5) The construction of street bumpers for the purpose of traffic regulation. City of Vicksburg v. Harralson, 136 Miss. 872, 101 So. 713 (1924); and
(6) The hauling of dirt and trash. City of Pass Christian v. Fernandez, 100 Miss. 76, 56 So. 329 (1911).
To the contrary, the court has determined these functions to be governmental, thereby providing immunity:
(1) The establishment and maintenance of a police department, specifically, test driving a malfunctioning police car to determine defect. Jackson v. Smith, 309 So.2d 520 (Miss. 1975);
(2) Engaging in matters pertaining to the police powers of the city, specifically, policeman driving patrol car while on duty to pick up second policeman and transport him to city hall. City of Hattiesburg v. Buckalew, 240 Miss. 323, 127 So.2d 428 (1961);
(3) Making repairs on city hall building. Jones v. City of Amory, 184 Miss. 161, 185 So. 237 (1939); and
(4) "Maintaining and operating" a fire department, specifically, driving a fire engine and horses from a temporary storage shed to their regular quarters. City of Hattiesburg v. Geigor, 118 Miss. 676, 79 So. 846 (1918).
The record shows that at the time of the collision Captain Box was accompanying the representative (Estes) of the prospective buyer of the fire truck (the Belden Volunteer Fire Company) on a test drive of the vehicle. The parties stipulated Estes and Box were not answering a fire call. Further, when counsel for White asked "Was this fire truck going out to perform any fire function for the City of Tupelo?", Chief Sanders responded that it was not. Chief Sanders continued, "The only thing that I would say that they were doing in and for the fire department was to help this man learn to operate this piece of equipment so they could use it. That's the only thing I have to say."
Appellants argue the city was acting simply as a "used car dealer," an activity which had nothing to do with a public purpose. The appellees counter by contending the disposal of a surplus fire truck is an activity incidental to the operation of a fire department and is therefore a governmental duty to which immunity attaches.
We are of the opinion that disposing of equipment which is no longer needed is an inherent part of the maintenance and operation of a fire department, which has been held to be a governmental function. City of Hattiesburg v. Geigor, 118 Miss. 676, 79 So. 846 (1918). Although appellants argue forcefully that the "commercial" nature of the activity rendered it corporate or proprietary, we find no Mississippi cases holding specifically that the sale of equipment is not a governmental function. Likewise, the fact that the truck was not performing any fire function at the time of the crash does not require the activity to be labeled corporate, since the Geigor case held that moving equipment from one storage location to another was a governmental function.
Having applied the foregoing cases to the facts of this case, we are unable to say the lower court erred in dismissing the City of Tupelo on the basis of sovereign immunity.
We turn now to appellants' proposition, based on Davis v. Little, 362 So.2d 642 (Miss. 1978), that the court improperly sustained Chief Sanders' motion to dismiss. That case distinguished sovereign immunity from the immunity of public officials as follows:
The immunity of public officials, on the other hand, is a more limited principle, since its purpose is not directly to protect the sovereign, but rather to do so only collaterally, by protecting the public official in performance of his governmental function. Given the more limited function, courts have generally extended less than absolute immunity. The most commonly recognized limitation is the distinction *710 between discretionary acts as opposed to ministerial acts. Under this distinction the official is immune only where that which he does in the performance of his lawful duties requires "personal deliberation, decision and judgment." See Prosser, Law of Torts § 132 (4th ed. 1971). (Emphasis added.)
362 So.2d at 643.
In the Davis case, the complaint alleged that Leslie Little, a member of the Simpson County Board of Supervisors, negligently drove her pickup truck onto a sidewalk, causing personal injury to Davis. Little answered she had been driving a countyowned vehicle and had been involved in county business at the time of the incident; she then invoked the doctrine of governmental immunity. In rejecting Little's defense, the court stated:
Little argues that a public official engaged in county business is per se immune from suit. This is not the rule in this jurisdiction. The immunity of a public official is a limited, not an absolute immunity. Since the purpose of the immunity is to protect the official in his decision-making role, we have held the immunity will not apply unless the action involves a discretionary decision-making process. Phrased otherwise, if the action is merely ministerial, there is no immunity. In Poyner v. Gilmore, 171 Miss. 859, 158 So. 922 (1935), this Court said:
While no inflexible rule can be laid down for determining in every case whether or not an act of a public officer is ministerial or judicial, "The most important criterion, perhaps, is that (if) the duty is one which has been positively imposed by law and its performance required at a time and in a manner or upon conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion ..." (171 Miss. at 864, 158 So. at 923). (Emphasis added.)
362 So.2d at 644.
Absent a conclusion that Sanders' part in the occurrence was a ministerial duty, we must hold he was immune from suit and affirm the lower court.
Sanders appears to have been sued solely by virtue of his official capacity and not because of any actual personal involvement in the incident. Box was in charge of the fire station at the time he and Estes boarded the truck. Sanders testified he "was told" Box had accompanied Estes on the truck to show Estes how to drive it. However, Sanders was on the opposite side of town when he learned of the collision.
We find nothing in the record to indicate Sanders was discharging ministerial duties, as defined in Poyner and Davis, at the time in question. For this reason we cannot conclude the lower court was manifestly wrong in holding Sanders immune from suit.
For the foregoing reasons, the judgment is affirmed.
AFFIRMED.
WALKER and ROY NOBLE LEE, P.JJ., and BOWLING, HAWKINS, DAN M. LEE, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.