523 So.2d 1013 (1988)
REGION VII, MENTAL HEALTH-MENTAL RETARDATION CENTER: H.H. Bagwell, Ben Rosenkrans, Dr. Joe N. Robinson, Mrs. Marion Cole, James Landrum, Sandra Cummings, Laurline Tabor, Commissioners of Regional Mental Health-Mental Retardation Commission, Region Vii, and George Renaker
v.
Mary Laura ISAAC, Dennis Isacc, Tannie Isaac, and Billie Isaac, a Minor, and Annette Isaac, a Minor, By and Through their Next Friend, Mary Laura Isaac.
No. 57619.
Supreme Court of Mississippi.
April 13, 1988.
*1014 Joseph L. McCoy, Senith C. Tipton, McCoy, Wilkins, Noblin & Stephens, Jackson, Gary R. Parvin, Starkville, for appellants.
Wayne Milner, Binder, Milner & Milner, Michael L. Knapp, Jackson, for appellees.
Before DAN M. LEE, P.J., and ANDERSON and GRIFFIN, JJ.
GRIFFIN, Justice, for the Court:
Region VII, Mental Health-Mental Retardation Center, et al., were granted interlocutory appeal by the Oktibbeha County Circuit Court, from that court's order denying their motions for summary judgment. As error, appellants and defendants below allege that denial of said motions, based upon sovereign and public official immunity, was contrary to the controlling principles of Mississippi law. We agree, and will address the claims of the individual parties in turn.

THE FACTS
The instant litigation is a wrongful death action by the family of John Isaac, seeking to recover $1,000,000 actual and $1,000,000 punitive damages for the death of Isaac, who was stabbed to death by one James Bishop, on March 5, 1981. Isaac and Bishop were roommates in the Supervised Apartment Program established by the Region VII Mental Health-Mental Retardation Commission ("Region VII"), wherein commercially available apartment units in Starkville, Oktibbeha County, Mississippi, were provided for lease to certain disabled adults enrolled in the program. Apparently, a minimum of supervision was exercised over the "clients" in the program, entailing a daily half-hour meeting period between the program's staff members and their "clients". The "clients" would set goals for themselves  such as finding a job, etc.  which the parties would meet to discuss.
Following Bishop's indictment for murder on March 5, 1981 (a wholly separate cause of action from the case at bar), Isaac's mother and siblings (his heirs) filed a complaint against Region VII, its individual commissioners, and George Renaker, an employee of Region VII in the Supervised Apartment Program, alleging among other things that defendants owed a duty of reasonable care with regard to protection of John Isaac, had negligently breached this duty in the scope and course of their employment, and as such were jointly and severally liable for damages for the wrongful death of John Isaac.
After extensive discovery had been conducted, defendants filed motions for summary judgment, based upon the defense of sovereign immunity, and qualified public official immunity, to the charges filed by plaintiffs against them. Memorandum briefs in support of these motions for summary judgment were filed as well.
*1015 Oral argument was heard on the motions and, upon the request of the court, submitted on the aforementioned written briefs.
On June 1, 1986, the lower court denied the motions for summary judgment as to all defendants.
Upon petition of the defendants, the lower court granted their motion for interlocutory appeal, allowing appeal of the denial of the motions for summary judgment to come before this Court.

I.

Was there no genuine issue of material fact that Region VII Mental Health-Mental Retardation Center is entitled to summary dismissal on the basis of sovereign immunity?
The sole basis for Region VII's motion for summary judgment rests in a defense of protection from liability for damages sought via the doctrine of sovereign immunity. As such, Region VII claims that there is no issue of genuine fact material to any element in plaintiffs' claim, and its motion for summary judgment was thus improperly denied.
This is an area of the law which has received a great deal of attention, and as recently as this past week this Court handed down three decisions regarding the immunity of the state and its agencies and subdivisions from suit as well as the qualified immunity owing to the public officials employed therein.[1]
The seminal decision of Pruett v. City of Rosedale, 421 So.2d 1046 (Miss. 1982) set the stage: that opinion provided that sovereignty would be abolished only for causes accruing after July 1, 1984, and anything accruing prior to that date was to be governed by the traditional common law immunities.[2]
The Isaacs' claim arose on March 5, 1981, and thus is controlled by pre-Pruett case law and statutory law in effect prior to July 1, 1984. Under this law, the State and its subdivisions are not subject to suit in absence of express statutory authority, and such authority cannot merely be implied unless the implication is made clear and unambiguous by the enabling statute. Strait, supra. See also, Lowndes County District 5 v. Miss. State Hwy. Comm'n., 220 So.2d 349 (Miss. 1969); French v. Pearl River Valley Water Supply District, 394 So.2d 1385 (Miss. 1981); City of Jackson v. Wallace, 189 Miss. 252, 196 So. 223 (1940).
The enabling statute authorizing regional commissions such as Region VII is Miss. Code Ann. § 41-19-33 (1972). This statute provides for the establishment of the regional commissions for mental health retardation centers and programs and enumerates the duties and authorities of the appointed commissioners therein.
However, while acquisition of liability insurance is provided for under the statute (sub-sections (i) and (j)), there is by no means any indication of explicit waiver as required by our case law.[3] The mere purchase of liability insurance by a governmental entity does not waive sovereign immunity. Strait, supra, quoting French v. Pearl River Valley Water Supply District, supra.
In Joseph v. Tennessee Partners, Inc., 501 So.2d 371 (Miss. 1987), this Court said:
A government entity has not waived immunity from suit simply because it has *1016 obtained liability insurance without express statutory authority.

501 So.2d at 375 (emphasis added)
The Fifth Circuit in applying our law to cases before that court in which it examined whether the purchase of liability insurance by a governmental unit waives immunity has held that:
... the majority of jurisdictions have held that the procurement of insurance by a governmental unit to protect it from tort liability does not effect a waiver of immunity. See, e.g., McKenzie v. City of Florence, 234 S.C. 428, 108 S.E.2d 825 (1959); Annot., Municipal Immunity Insurance, 68 A.L.R. 1438. In addition, we recently held in Reeves v. City of Jackson, 608 F.2d 644 (5th Cir.1979), that under Mississippi law, a state municipality did not waive its immunity by purchasing liability insurance.
Karpovs v. State of Miss., 663 F.2d 640 (5th Cir.1981).
There is no genuine issue of material fact in the case at bar, and the motion for summary judgment made by defendant Region VII was improperly denied.

II.

Was there no genuine issue of material fact that the individual defendant commissioners are entitled to summary dismissal on the basis of public official immunity?
The Region VII commissioners named as individual defendants in this action and also appealing denial of their motions for summary judgment were appointed pursuant to Miss. Code Ann. § 41-19-33 (1972). The sum of their argument for reversal of denial rests in a claim for qualified immunity, in that they engaged in no ministerial acts regarding plaintiff's decedent, John Isaac, or his roommate, James Bishop.
The duties enumerated under § 41-19-33 are fairly broad: they include the administration of programs set out under sections following; the establishing, owning, leasing, etc. of mental health facilities; the entering into contracts with state and federal governments, and their agencies, for the aforementioned purposes and duties; the employment of personnel therein; and the promotion of the general mental health of the people of the region. Miss. Code Ann. § 41-19-33(f) (1972).
Immunity is extended to public officials acting in their official capacity unless they are performing merely ministerial duties. Davis v. Little, 362 So.2d 642 (Miss. 1978). In Davis, supra at 644, we held that:
The immunity of a public official is limited, not an absolute immunity. Since the purpose of the immunity is to protect the official in his decision-making role, we have held the immunity will not apply unless the action involves a discretionary decision-making process. Phrased otherwise, if the action is merely ministerial, there is no immunity.
This distinction between "discretionary" and "ministerial" duties has been recognized on many occasions. See, e.g., Karpovs, supra at 647; State for the Use and Benefit of Brazeale v. Lewis, 498 So.2d 321, 322 (Miss. 1986); White v. City of Tupelo, 462 So.2d 707, 710 (Miss. 1984); Davis, supra at 645; State, ex rel. Russell v. McRae, 169 Miss. 169, 179, 152 So. 826, 828 (1934).
In Poyner v. Gilmore, 171 Miss. 859, 158 So. 922 (1935), the means of distinguishing between the two official capacities was this:
While no flexible rule can be laid down for determining in every case whether or not an act of a public officer is ministerial or judicial, the most important criterion, perhaps, is that [if] the duty is one which has been positively imposed by law and in a manner or upon conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion.
171 Miss. at 864-5, 158 So. at 925.
In Lewis, supra, we determined that a member of the county board of supervisors retained qualified immunity from liability for plaintiff's injuries arising from a poorly maintained road in the county of defendant's jurisdiction. 498 So.2d at 323.
*1017 In White, supra, we held that the Tupelo Fire Chief was sued by the plaintiff therein "solely by virtue of his official capacity and not because of any actual involvement in the incident... ." 462 So.2d at 710. The plaintiff in White had suffered injuries when his automobile collided with a fire truck owned by the City of Tupelo. This Court determined that the defendant was not discharging ministerial duties at the time the fire truck was involved in a collision, and thus he was immune from suit by the parties injured in the collision. 462 So.2d at 710.
The unopposed affidavits of the commissioners in the case at bar establish unequivocally that they had no role in the roommate selection or supervision of "clients" in the supervised apartment program; in fact, such actions made with respect to the program evidence strongly purely discretionary decisions made by the board as a whole regarding program establishment and implementation.
The commissioners are entitled to immunity; therefore, their motions for summary judgment should not have been denied.

III.

Was there no genuine issue of material fact that the employee defendant George Renaker is entitled to summary dismissal on the grounds of public official immunity?
George Renaker, an employee of Region VII, was charged with negligent supervision as well and now appeals the denial of his motion for summary judgment premised upon a defense of qualified immunity. Renaker, hired in 1981, held the position of "Community Living Coordinator" for the supervised apartment program. In that capacity he lived with his wife, another coordinator in the program, at the apartments and had daily contact with each resident in the program. His responsibilities included supervision of the clients as to their jobs and daily activities.
Appellants submit that Renaker holds the same public official immunity which clothes the commissioners herein from liability, and in support thereof they cite Karpovs, supra.
In Karpovs, the federal court said that Mississippi extends the qualified immunity granted to public officials to employees acting in the scope and course of their employment. 663 F.2d at 647.
In the recent case of Marshall, et al., supra, the issue presented upon appeal was whether the defendant and appellee therein, a Dr. Chawla, was protected from liability by the doctrine of sovereign immunity or by the qualified immunity given to public officials acting in a discretionary capacity within the scope of their duties.
Dr. Chawla was employed at the Kuhn Memorial State Hospital located in Vicksburg. Chawla was on duty at the time the relative of Marshall, et al. was admitted and subsequently died. Marshall, et al. alleged negligence to which Chawla made his defense in a motion to dismiss on the grounds of sovereign immunity. The lower court granted Chawla's motion, announcing it was relying on this Court's decision in Hudson v. Rausa, 462 So.2d 689 (Miss. 1984). On appeal, we affirmed.
This was the scenario in Hudson:
Rausa was a physician employed by the State Board of Health charged with carrying out a program to prevent the spread of tuberculosis. Pursuant to this program he prescribed a certain drug to a man named Hudson. The drug in question sometimes produced hepatitis as a side effect in certain individuals; Hudson proved to be one of these individuals and died of hepatitis after the drug was administered to him. His survivors sued under the wrongful death statute and Rausa claimed sovereign immunity as a defense. The Hudsons responded that while the formation of the overall health policy against tuberculosis might have been "discretionary", particular actions in carrying it out, such as the treatment of specific individuals, were ministerial. The court rejected this narrow view, saying "we believed the discretion given to the defendants applied not only to their decisions with instituting a program for control, but also the treatment administered in carrying out such policies." The *1018 court came very close to saying that "all" medical decisions would be immunized from suit if they occurred in the context of a state institution because "the administration of medical treatment involves the exercise of considerable professional judgment and its discretion... ." Hudson, 462 So.2d at 695-96.
Marshall, supra at 1375-1376.
The Court in Marshall, supra, at 1376, upheld Hudson and declined "to distinguish Hudson by arguing that Hudson was immunized from liability by his status as a health department official implementing a health policy enacted for the good of the people of the state as a whole, as opposed to Dr. Chawla who was `simply a physician employed by the state hospital to treat the general public and his actions of the treatment of patients was subject to the same standards of care as other physicians'."
We believe under the principles stated in Rausa, supra, and reaffirmed in Marshall, supra, that Renaker is entitled to the same qualified immunity granted to the Region VII commissioners in the case at bar.
Accordingly, we find the motions for summary judgment were improperly denied and reverse the lower court's decision.
REVERSED AND RENDERED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and ZUCCARO, JJ., concur.
NOTES
[1] These are Marshall v. Chawla, 520 So.2d 1374 (Miss. 1988); Grantham v. Miss. Dep't of Corrections, 522 So.2d 219 (Miss. 1988); and Strait v. Pat Harrison Waterway District, 523 So.2d 36 (Miss. 1988).
[2] In response to Pruett, the legislature enacted the Sovereign Immunity Act of 1984, which, as amended, extended the prospective date for abolition of sovereign immunity to July 1, 1988, for the State of Mississippi, and October 1, 1988, for its political subdivisions. Miss. Code Ann. §§ 11-46-1, et seq. (Supp. 1987). Strait, supra.
[3] These sub-sections read:

(i) To acquire whatever liability, hazard, casualty or workmen's compensation insurance that may be necessary for any property, real or personal, owned, leased or rented by said commissions, or any employees or personnel hired by the said commissions.
(j) To acquire professional liability insurance on all employees as may be deemed necessary and proper by the commission, and to pay, out of the funds of the commission, all premiums due and payable on account thereof.