583 So.2d 946 (1991)
Patricia WEBB
v.
Charles JACKSON and the City of Newton, Mississippi.
No. 90-CA-0188.
Supreme Court of Mississippi.
June 26, 1991.
*947 Laurel G. Weir, Thomas L. Booker, Jr., Weir & Booker, Philadelphia, for appellant.
Gary E. Friedman, Phelps & Dunbar, Victoria W. Thomas, Ott Purdy & Scott, Jackson, for appellee.
Before HAWKINS, P.J., and SULLIVAN and PITTMAN, JJ.
SULLIVAN, Justice, for the Court:
On October 23, 1989, Patricia Webb filed a Complaint in the Newton County Circuit Court charging Charles Jackson, a police officer employed by the City of Newton, with negligence and assault and battery. The Complaint named the City of Newton as a co-defendant since the alleged tortious conduct of Jackson occurred within the scope of his employment. Jackson and the City of Newton denied the charges in their Answer filed December 22, 1989, and asserted *948 the affirmative defenses of qualified immunity and sovereign immunity.
Also filed on that date by Jackson and the City of Newton was a Motion to Dismiss, or, in the Alternative, for Summary Judgment. Included with the Motion were affidavits from Charles Jackson, Dr. Jerry O. Bounds, Jr., and Patrick A. Dunne.
In response, Webb filed an Amended Complaint. She also filed an affidavit objecting to the Motion for Summary Judgment and a brief supporting her position. Jackson and the City of Newton filed an Answer to the Amended Complaint again asserting the affirmative defenses of qualified and sovereign immunity.
The court entered final judgment on February 13, 1990 granting the defendants' Motion for Summary Judgment. Webb appeals that decision contending that there were genuine issues of material fact so as to preclude summary judgment. She assigns three issues as error.

FACTS
Initially, Patricia Webb alleged that on September 6, 1989, she was on the porch of her house holding her dog. While acting within the scope of his employment, Officer Charles Jackson came to her house and shot at Webb and her dog in a grossly negligent, willful, and malicious manner. The shot killed the dog and although Webb was not hit, the shot was so near to her that it caused dirt and debris to strike her.
As a result of the death of her dog, Webb allegedly suffered actual damages in the amount of $1500.00, which amount is a reasonable value of the dog. She also suffered a great deal of pain and suffering and will continue to do so in the future because of the assault and battery upon her person. Other alleged damages in the Complaint included lost wages and medical expenses. Webb asked that she be compensated for actual and punitive damages in the amount of $3,000,000.00.
Charles Jackson and the City of Newton denied the allegations and asserted affirmatively that Jackson was entitled to qualified immunity because, as a police officer, he was privileged to use reasonable force to protect himself in the course of his duties. The City of Newton denied liability on the basis of sovereign immunity.
The defendants filed a Motion to Dismiss, or, in the Alternative, for Summary Judgment. The Motion urged dismissal of the action on the grounds of qualified and sovereign immunity. Attached to the Motion were three affidavits in support thereof.
The first affidavit was from Officer Charles Jackson. The affidavit contained his version of the events which occurred on September 6, 1989. Jackson said that he was instructed by the Police Chief to find the driver of an eighteen-wheeler which was parked on the corner of Shady Grove and South Main Streets. The truck was obstructing the view of drivers and needed to be moved.
In an effort to find the owner, Jackson walked toward the nearest house to the truck. Hearing a dog barking ferociously from inside the house, he turned to retreat. At about that time, the door opened and the dog charged toward him. He was afraid the dog would harm him, so he shot toward the dog thinking the sound of the shot would stop the dog. He hit the dog in its right rear paw. Webb was standing on the porch approximately ten feet from the dog. The dog was in the yard at the time of the shot.
The second affidavit was from Dr. Jerry O. Bounds, Jr., a veterinarian in Newton. Dr. Bounds stated that he treated a dog belonging to Webb on or about September 6, 1989. The dog had been shot in the right rear paw which necessitated amputation of the outside toe. Dr. Bounds removed the sutures from the amputation on or about September 18, 1989, and at that time, the dog was in good health and had full use of the leg.
The last affidavit was from Patrick Dunne, the Executive Director of the Mississippi Municipal Authority. He stated that the City of Newton is a member of the Mississippi Municipal Liability Plan which was created to set up a reserve fund to protect municipalities from claims not covered *949 by a general policy of liability insurance and from claims for which the municipality does not enjoy immunity under the law. Included with his affidavit was a copy of the Bylaws of the Mississippi Municipal Liability Plan.
In response, Webb filed an Amended Complaint changing her claim that her dog was dead. She said, instead, that the paw of the dog had to be operated on and the cost of the operation was $55.00. However, she alleged that the dog had been a hunting dog with a value of over $1000.00 and had now no value because of the injury. She also inserted a new paragraph alleging that she had permission from the Sunflower Store to park the truck in its parking lot and that the defendants, for no reason at all, demanded that the truck be moved. This allegedly caused great inconvenience which in turn resulted in travel expenses, pain and suffering, worry and anxiety, medical expenses, and lost income.
Webb also filed an affidavit to support her objection to the Motion for Summary Judgment. She denied that she allowed the dog to charge at Officer Jackson and said that there was no reason for Jackson to shoot at the dog or at her since she was holding the dog. She also denied that the truck was obstructing the view of traffic.
The court held a telephonic conference with the parties' attorneys on January 24, 1990. At the close of the conference, the judge ruled in favor of the defendants' Motion for Summary Judgment on the basis that Jackson was entitled to qualified immunity and the City of Newton was entitled to sovereign immunity.

LAW
According to Rule 56 of the Mississippi Rules of Civil Procedure, a court may grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A fact is material if it "tends to resolve any of the issues, properly raised by the parties." Mink v. Andrew Jackson Casualty Insurance Co., 537 So.2d 431, 433 (Miss. 1988) [quoting Mississippi Road Supply v. Zurich-American Insurance Co., 501 So.2d 412, 414 (Miss. 1987)].
The trial court must view the evidence before it in the light most favorable to the non-moving party, and the non-moving party should be allowed every reasonable doubt. "Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says the opposite." Foldes v. Hancock Bank, 554 So.2d 319, 321 (Miss. 1989) [quoting Clark v. Moore Memorial United Methodist Church, 538 So.2d 760, 762 (Miss. 1989)]. Where the grant or denial of summary judgment is involved on appeal, we conduct de novo review. Parham v. Moore, 552 So.2d 121, 122-123 (Miss. 1989); Short v. Columbus Rubber & Gasket Co., Inc., 535 So.2d 61, 63 (Miss. 1988).

I. DID THE TRIAL COURT ERR IN GRANTING SUMMARY JUDGMENT IN FAVOR OF POLICEMAN CHARLES JACKSON?
Public officials have qualified immunity in a civil action when they have been performing functions which are discretionary in nature. However, three exceptions exist to that rule which, if present, result in the loss of immunity. As stated in McFadden v. State, 542 So.2d 871 (Miss. 1989),
When an individual who is a state government official is named as a defendant in a civil action, our law thus directs that he or she enjoy
no immunity to a civil action for damages if his breach of a legal duty causes injury and (1) that duty is ministerial in nature, or (2) that duty involves the use of discretion and the governmental actor greatly or substantially exceeds his authority and in the course thereof causes harm, or (3) the governmental actor commits an intentional tort. Beyond that, a government official has no immunity when sued upon a tort that has nothing to do *950 with his official position or decision-making function and has been committed outside the course and scope of his office.
McFadden, 542 So.2d at 877 [quoting Grantham v. Mississippi Department of Corrections, 522 So.2d 219, 225 (Miss. 1988)].
The difference between a ministerial function and a discretionary function was explained in Poyner v. Gilmore, 171 Miss. 859, 158 So. 922 (1935). A duty or function is ministerial "if the duty is one that has been positively imposed by law and its performance required at a time and manner or upon conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion." Marshall v. Chawla, 520 So.2d 1374, 1375 (Miss. 1988) [quoting Poyner v. Gilmore, 171 Miss. 859, 864-865, 158 So. 922, 923 (1935)].
Webb has asserted two causes of action against Officer Jackson. They are negligence and assault and battery. These are considered separately.

A. NEGLIGENCE
Negligence is not an intentional tort. Therefore, Officer Jackson enjoys qualified immunity unless he was involved in a ministerial duty or the duty was discretionary but he greatly exceeded his authority.
If Officer Jackson loses his immunity under one of these two exceptions, Webb must prove, as in any other negligence action, that Jackson owed her a duty, that he breached that duty, that an injury resulted, and that the breach proximately caused the injury. Webb must also show proof of actual damages.
Under Mississippi law, a person who handles firearms owes a duty to others which duty imposes the highest degree of care upon that person. As this Court has noted,
[Firearms] are extraordinarily dangerous, and in using them extraordinary care should be exercised to prevent injury to others. We quote from Cooley on Torts (3d Ed), p. 1232, as follows: "A high degree of care is necessary in the use or manipulation of loaded weapons in the presence or vicinity of other persons, and where injury results from a failure to exercise such care the defendant is liable." We take the following rule from Barrows on Negligence, p. 367: "The bearer of loaded firearms is bound to exercise the utmost diligence in their handling and he is liable for any injury caused by their discharge, unless it appear that he was entirely without fault."
Johnson v. Cunningham, 107 Miss. 140, 152, 65 So. 115, 118 (1914).
Clearly, Officer Jackson did owe Webb a duty to use a high degree of care in handling his gun. Whether that duty was breached and whether Webb can prove her claim for damages are questions for a jury. If Officer Jackson loses his immunity under one of the two exceptions, Webb's action for negligence would involve genuine issues of material fact.
We make no determination of whether Officer Jackson was involved in a discretionary or ministerial duty since that determination would make no difference to the outcome of whether summary judgment was proper on the theory of negligence. If performing a ministerial duty, Officer Jackson had no qualified immunity. If performing a discretionary duty, Officer Jackson would enjoy no immunity if he greatly exceeded his authority.
The record contains two versions of the events, Webb's and Officer Jackson's. Webb contends that she was holding the dog when Officer Jackson fired his gun. If true, then he did exceed his authority. On the other hand, Officer Jackson says that the dog charged at him and he fired in an attempt to stop the dog. This act probably exceeded his authority if he failed to use extraordinary care. However, whose version to believe and whether Jackson failed to use extraordinary care are fact questions which should be determined by a jury. For that reason, summary judgment should not have been granted on that issue.

*951 B. ASSAULT AND BATTERY
Assault and battery are intentional torts. See Miss. Code Ann. § 15-1-35 (Supp. 1990) and City of Mound Bayou v. Johnson, 562 So.2d 1212, 1217-1218 (Miss. 1990). Therefore, if Jackson is guilty of assault and battery, he would not be able to claim qualified immunity since a governmental actor is not immune from liability when he has committed an intentional tort.
Assault occurs where a person "(a) ... acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension." Restatement (Second) of Torts § 21 (1965). A battery goes one step beyond an assault in that a harmful contact actually occurs. Restatement (Second) of Torts § 13 (1965). Where a person causes the apprehension of a battery although not intending to cause either a battery or the apprehension of such, he is not liable since "[t]here is no such thing as a negligent assault." 1 Harper, James & Gray, The Law of Torts § 3.5 at 281 (2d ed. 1986).
A defense to the charge of an assault or battery is that the person was acting in self-defense. In such a situation, he "is privileged to use reasonable force, not intended or likely to cause death or serious bodily harm, to defend himself against unprivileged harmful or offensive contact or other bodily harm which he reasonably believes that another is about to inflict intentionally upon him." Restatement (Second) of Torts § 63 (1965).
Although a person defending himself should apply as little force as is possible to meet the particular situation,
[e]ven the most reasonable of men, confronted with the necessity of defending himself against a real or apparent attack, cannot be expected to measure accurately the exact amount of force necessary to repel it. It is only where there is a glaring discrepancy between the force applied and that which is necessary to prevent the apprehended harm, or where it is obvious that the actor knows or should know that he can defend himself by a lesser force that it is for the court to rule that the force applied is excessive. Otherwise it is for the jury to determine whether the force is or is not excessive.
Restatement (Second) of Torts § 70, comment (1965).
A police officer, in making an arrest or preventing an escape, "may exert such physical force as is necessary to effect the arrest by overcoming the resistance he encounters, but he can not take the life of the accused or inflict upon him great bodily harm except to save his own life or to prevent a like harm to himself." Holland v. Martin, 214 Miss. 1, 9, 56 So.2d 398, 400 (1952). When a defendant pleads self-defense, an affirmative defense, he bears the burden of proof on that issue. Western Union Telegraph Co. v. Stacy, 162 Miss. 286, 292, 139 So. 604 (1932). A plea of self-defense, which is disputed, is a question which should be submitted to the jury since the jury determines the credibility of the witnesses. Overing v. Skrmetta, 218 Miss. 648, 651, 67 So.2d 606, 608 (1953).
The record in this case presents Webb's version of what occurred and Officer Jackson's version. Because their versions differ substantially, the issue of whether Officer Jackson committed the intentional torts of assault and battery should have been submitted to a jury. Whether Officer Jackson possessed the requisite intent to commit an assault is open to question. Webb claims that she was holding the dog when Officer Jackson fired the shot. If believed, then his claim of self-defense is very weak. On the other hand, Officer Jackson claims that the dog was charging at him and that he fired in an attempt to stop the dog. If believed, Jackson's version tends to negate an intent on his part to commit an assault. However, these are questions for a jury who must decide on the credibility of the witnesses. Since Officer Jackson loses immunity if he committed an intentional tort, summary judgment was improper.

II. DID THE TRIAL COURT ERR IN GRANTING SUMMARY JUDGMENT IN FAVOR OF THE CITY OF NEWTON?
Pruett v. City of Rosedale, 421 So.2d 1046 (Miss. 1982), abolished judicial *952 sovereign immunity as of July 1, 1984. However, "the Legislature has repeatedly enacted a legislative doctrine of sovereign immunity, each set to repeal at the end of the fiscal year following the legislative session during which it was enacted" so that Pruett has as yet to take effect. Webb v. County of Lincoln, 536 So.2d 1356, 1358 (Miss. 1988). We have declined to usurp the authority given to the Legislature regarding policy making by abolishing sovereign immunity all together. Richardson v. Rankin County School District, 540 So.2d 5, 9 (Miss. 1989).
The most recent extension of the dates that sovereign immunity will be in effect is found in Miss. Code Ann. § 11-46-6 (Supp. 1990). Sovereign immunity applies to
[c]laims or causes of action arising from acts or omissions occurring prior to July 1, 1991, as to the state, or prior to October 1, 1991, as to political subdivisions, [which] shall continue to be governed by the case law governing sovereign immunity as it existed immediately prior to the decision in the case of Pruett v. City of Rosedale, 421 So.2d 1046, and by the statutory law governing sovereign immunity in effect from and after the passage of Chapter 474, Laws of 1985.
Whether a municipality enjoys sovereign immunity under pre-Pruett law depends upon whether the alleged conduct occurred in the exercise of a governmental function or in the exercise of a proprietary or corporate function. "[T]here can be no recovery against a municipality based on negligence in the exercise of functions which are essentially governmental in character; however, when acting in a private or a proprietary capacity, it is liable in tort the same as private corporations." White v. City of Tupelo, 462 So.2d 707, 708 (Miss. 1984) [quoting Nathaniel v. City of Moss Point, 385 So.2d 599, 601 (Miss. 1980)].
Whether a function is governmental or proprietary in nature is not always easy to ascertain. In discussing the difference, we have said:
The classifications are broad, very general, and the line between the two is quite frequently difficult to define. Nevertheless, there are certain activities which courts choose to call `governmental' for which no liability is imposed for wrongful or tortious conduct. These are activities or services which a municipality is required by state law to engage in and to perform.
On the other hand, there are activities in which a municipal corporation engages, not required or imposed upon it by law, about which it is free to perform or not. Such activities the courts call `proprietary or corporate'. This Court has judicially construed other permissible `public and governmental' activities to be `corporate or proprietary.'
* * * * * *
It is also readily apparent that the determination of whether a certain activity of a municipal corporation is governmental or proprietary for purposes of judicial application is a fact to be determined in each particular case from an examination of the activity involved.
Anderson v. Jackson Municipal Airport Authority, 419 So.2d 1010, 1014-1015 (Miss. 1982).
Officer Jackson was sent to the corner of Shady Grove and South Main Streets by the Police Chief to locate the driver of an eighteen-wheeler which was obstructing the view of drivers. In this particular case, we hold that Officer Jackson was involved in the exercise of a governmental function. The City of Newton thus enjoys sovereign immunity on that basis.
Section 21-15-6 provides that where a municipality has liability coverage "as to any action brought against it," recovery may be had but is limited to the proceeds of the insurance coverage. (Emphasis added). The bylaws of the Mississippi Municipal Liability Plan states that the funds contributed by members under the Plan are intended "for the payment of claims which are not insured and which are not covered by immunity under Chapter 46, Title 11, Miss. Code Ann., 1972, as amended." Since Officer Jackson was involved in the exercise of a governmental function for which immunity is granted under § 11-46-6, *953 the funds paid by MMLP members do not apply to this action. Therefore, we do not reach the question of whether the Mississippi Municipal Plan is general liability insurance within the meaning of § 21-15-6. Even if the Plan is general liability insurance, it would not provide coverage for an act which enjoys immunity under the law. The lower court's grant of summary judgment was proper as to the City of Newton.

III. DID THE TRIAL COURT ERR IN GRANTING SUMMARY JUDGMENT AS TO THE TORT OF THE CITY OF NEWTON AND CHARLES JACKSON IN FORBIDDING WEBB TO PARK AT THE SUNFLOWER STORE PARKING LOT?
Webb alleged, in her Amended Complaint, that she had permission to park the eighteen-wheeler in the Sunflower parking lot and that the defendants, for no reason, demanded that she move the truck. Webb claims that the Motion for Summary Judgment did not include this issue and that the judge did not address this issue.
In the telephonic conference, Webb's attorney stated:
BY MR. WEIR: Judge, I think the way they had it fixed, the summary judgment motion applied to the amended complaint.
BY THE COURT: That's right. That is exactly right....
BY MR. WEIR: Well, they have answered the amended complaint, and everybody has taken the position, really, unless you haven't, that the whole thing would be taking the position that the amended complaint was considered.
BY THE COURT: I think I took that position.
Clearly, both Webb's attorney and the judge understood that the summary judgment motion and the judge's ruling applied to the Amended Complaint. A client is bound by the statement of his or her attorney "[w]hen, during the course of a trial [the] attorney, with intent to influence the ruling or decision by the court on a point in issue, makes a solemn statement to the court committing his client to some legal position on the issue before the court... ." Sears, Roebuck & Co. v. Devers, 405 So.2d 898, 900 (Miss. 1981).
Since Webb is bound, the question is whether summary judgment was proper on that section of Webb's Complaint. As stated, the City of Newton enjoys sovereign immunity since Officer Jackson was involved in the performance of a governmental function. As to that section of the Complaint, Officer Jackson enjoys qualified immunity since the misconduct alleged does not fall within one of the three exceptions to qualified immunity. Summary judgment was proper on that issue.

CONCLUSION
Webb and Officer Jackson each presented their versions of the events occurring on September 6, 1989. Neither party has offered affidavits from any eyewitnesses. Dr. Bounds' affidavit, although it proved that Webb's dog was not dead from the gunshot, did not deal with the remaining fact issues.
Webb alleges that she was holding the dog when Officer Jackson fired his gun. Officer Jackson claims that he fired the shot when the dog charged at him. These opposing versions create genuine issues of material fact as to the two causes of action asserted by Webb in her Amended Complaint, negligence and assault and battery. The grant of summary judgment by the court was improper on those issues since Officer Jackson would lose his immunity if a jury believes Webb's version.
Summary judgment was proper as to the City of Newton, however. Officer Jackson was involved in the exercise of a governmental function for which a municipality enjoys sovereign immunity.
Finally, summary judgment was proper as to Webb's allegation that she was inconvenienced and suffered damages because she was ordered to move the eighteen-wheeler. Officer Jackson is protected by qualified immunity and the City of Newton by sovereign immunity on that issue.
*954 THE GRANT OF SUMMARY JUDGMENT AS TO THE LIABILITY OF THE CITY OF NEWTON IS AFFIRMED; THE GRANT OF SUMMARY JUDGMENT AS TO THE LIABILITY OF OFFICER JACKSON ON THE ISSUES OF NEGLIGENCE AND ASSAULT AND BATTERY IS REVERSED AND REMANDED FOR A TRIAL ON THE MERITS.
AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, PITTMAN and BANKS, JJ., concur.
McRAE, J., concurs in part and dissents in part by separate written opinion.
McRAE, Justice, concurring in part, dissenting in part:
I concur with the majority as to reversing this case as to the liability of Officer Jackson. However, I dissent on the court's granting summary judgment as to the liability of the City of Newton based upon sovereign immunity. In Pruett v. City of Rosedale, 421 So.2d 1046 (Miss. 1982) (Bowling, J.), this Court abolished judicial sovereign immunity as of July 1, 1984, and gave the legislature an opportunity to revisit the court-created doctrine of sovereign immunity. Each year thereafter the legislature has repeatedly enacted a one-year extension of the sovereign immunity doctrine as found in Miss. Code Ann. § 11-46-6 (1972). The decision in Pruett has always been an oasis for abolishing sovereign immunity. In that particular case, this Court did not allow the City of Rosedale to have sovereign immunity. Since then, this Court has continued to revisit sovereign immunity and allowed it to stand, saying that they are waiting on the legislature to do something. It is time now, since almost ten years have passed, for this Court to revisit Pruett and apply it across the board.
The legislature did not create sovereign immunity. This Court did prior to and in the year of 1877 in Brabham v. The Board of Supervisors, 54 Miss. 363 (1877). Thus we have left the victims who were injured by the State, County, or City to suffer a wrong without a remedy. Our Mississippi Constitution of 1890 has stated in Art. III, Section 24 as follows:
All courts shall be open; and every person for an injury done him in his lands, goods, person, or reputation, shall have remedy by due course of law, and right and justice shall be administered without sale, denial, or delay.
This constitutional amendment clearly states that no person shall suffer a wrong without a remedy. It is time for this Court to bring to the forefront Pruett v. City of Rosedale and allow the citizenry the constitutional amendment under § 24 to have a remedy for a wrong committed on them even if it's done by a government entity. Further, to allow a city to have immunity and to allow the employees of the city, such as police officers, to suffer or not be afforded the privilege of the powers of the City to defend is doing an injustice to those employees by requiring them to either seek their own insurance, hire their own attorneys to defend, and even to pay the damages that they have caused all in the name and in the furtherance of the City's business. To allow this judicially created sovereign doctrine to continue to exist under modern times is disadvantageous to both members of the public and members of the sovereign state.
Our sister states of Louisiana, Alabama, and Florida have over sixteen years ago abolished the doctrine. See Board of Commissioners v. Splendour Shipping & Enterprises Co., Inc., 273 So.2d 19 (La. 1973); Lorence v. Hospital Board, 294 Ala. 614, 320 So.2d 631 (1975); Hargrove v. Town of Cocoa Beach, 96 So.2d 130 (Fla. 1957). In 1982 when Pruett v. City of Rosedale, supra, was decided, there were only five other states which had not taken any action or had not clarified their positions in either abrogating or abolishing sovereign immunity doctrine.
The doctrine of sovereign immunity is an historical anachronism which manifests an inefficient public policy and works injustice upon everyone concerned. It is incredible that in this modern age of comparative sociological enlightenment, the medieval absolutionism supposed to be implicit in the maxim, "the King can do no wrong," should exempt the various branches of the *955 government from liability for their torts, and that the entire burden of damages resulting from the wrongful acts of the government should be imposed upon the single individual who suffers the injury, rather than distributed among the entire community constituting the government, where it could be borne without hardship upon any individual, and where it justly belongs. Liability is the rule for negligent or tortious conduct; immunity is the exception. Equality is not achieved by artificial exceptions which indiscriminately grant some injured person's recourse in the courts and arbitrarily denies such relief to others. The operative effect of such arbitrary distinctions is incompatible with our established constitutional safeguards. Whatever justification existed for the doctrine that the state is immune from liability for tortious conduct unless the Legislature has consented to suit, that doctrine's day has long since passed.
I would reverse the lower court's ruling as to the City of Newton and say that the city, being the master of the employee Charles Jackson, would be held accountable for his actions and remand for a trial.