654 So.2d 898 (1995)
Charlie L. THOMAS, Jr. and the City of Jackson, Mississippi
v.
L. Breland HILBURN.
No. 91-CA-01238-SCT.
Supreme Court of Mississippi.
April 27, 1995.
*899 Terry Wallace, Jackson, for appellant.
Aubrey E. Nichols, Gholson Hicks Nichols & Ward, Columbus, for appellee.
Before HAWKINS, C.J., and McRAE and JAMES L. ROBERTS, Jr., JJ.
McRAE, Justice, for the Court:
In a wrongful death action brought against the City of Jackson, L. Breland Hilburn was awarded damages in the amount of $300,000.00 by a jury of the Hinds County Circuit Court on October 14, 1991 for the loss of his father, L.B. Hilburn, who died on November 1, 1987, as a result of injuries sustained when a City of Jackson tow truck driven by Charlie Thomas collided with his car. The City of Jackson contends that the circuit court erred in ruling that the City's operation of a garage and wrecker service is a proprietary function and thus not immune from tort liability; that the circuit court abused its discretion in refusing to grant a continuance sought by the City; and finally, that the jury's award of damages was excessive in light of the evidence presented. Finding that the City's operation of a service garage and towing service for its vehicles is a proprietary function and that the verdict was not excessive, we affirm the judgment below.

I.
On October 26, 1987, a City of Jackson tow truck driven by Charlie Thomas collided with L.B. Hilburn's car at the intersection of Bailey *900 Avenue and Maple Street in Jackson, Mississippi.[1] Seventy-five year old Hilburn sustained injuries to his chest, where he had hit the steering wheel, as well as facial cuts and bruises and hematomas on his hand and lower leg. He was admitted to the Mississippi Baptist Medical Center for observation and discharged on October 28, 1987. Dr. Holland M. Addison, the original treating physician, examined Hilburn again on October 30. On November 1, 1987, Hilburn collapsed at home. He was transported to the Baptist Hospital, where efforts to revive him were unsuccessful. The autopsy indicated that Hilburn died as a result of the blow to the chest from the steering wheel which "resulted in fatal aortic tear on a well-healed, old, dissecting aortic aneurysm."
At the time of the accident, Charlie Thomas was employed by the City of Jackson as a mechanics' helper and tow truck driver for the City of Jackson Public Safety Garage. Just prior to the accident, Thomas and the tow truck had been dispatched to pull a police car onto the pavement from where it had become stuck in the grass. In his deposition,[2] Thomas responded affirmatively to the questions, "So, you were asked to go pick up a police car and bring it back to the station to work on it?" and "And you had the police vehicle behind your wrecker at this time?" However, neither the testimony of his supervisor, Officer Jimmie Jones, the accident report, nor photographs taken at the accident scene indicate that the tow truck was pulling the police car at the time of the collision.
Thomas stated that just prior to the accident, he had made a detour to the Precinct 3 station on personal business. Initially, he indicated that he had stopped to talk with someone to get his opinion on a personal matter. He then stated that that stop was made on another date; on the day of the collision, he had stopped at Precinct 3 to use the restroom.
L. Breland Hilburn filed this wrongful death action against the City and Thomas, its employee, on November 6, 1989 in the Circuit Court of Smith County. He alleged that Thomas' negligence was the sole proximate cause of the accident which ultimately claimed his father's life. In response to the City's motion and pursuant to Miss. Code Ann. § 11-45-2 (1972), requiring initiation of suit against a municipality in the county in which it is located, the Smith County Circuit Court ordered the case transferred to Hinds County.
The City raised the defense of sovereign immunity, asserting that at the time of the accident, the City and its employee were engaged in a governmental function and further, that since the City had not purchased liability insurance, it had not waived its immunity. Hilburn moved for partial summary judgment on the issue of the City's sovereign immunity defense. Finding that the City's operation of its own garage and towing service is a proprietary function, and not a governmental function, and further, that the legislative scheme of sovereign immunity was void and unconstitutional as it existed at the time of the accident, the special circuit court judge granted Hilburn's motion. This Court denied the City's motion for interlocutory appeal on the circuit court's order.
After hearing the evidence presented on October 14, 1991, the jury found in favor of Hilburn and awarded $300,000.00 in damages. The City of Jackson and Thomas filed a Motion for J.N.O.V. or in the Alternative for Remittitur or Alternatively for a New Trial. The motion was denied by the special circuit court judge.

II.
The City of Jackson first contends that the special circuit court judge, in granting Hilburn's motion for summary judgment, erred in finding that the City's operation of its own maintenance garage and towing service was a proprietary function and thus not subject to the protection afforded by governmental immunity. Relying on White v. City of Tupelo, 462 So.2d 707 (Miss. 1984), the City argues that its duty to maintain its fire and police *901 vehicles makes the operation of a city garage and towing service a governmental function. We disagree.
A city or municipality is immune from suit when the injury stems from the performance of a governmental function; however, the city does not enjoy such immunity when it is responsible for an injury arising from the performance of a proprietary function. Morgan v. City of Ruleville, 627 So.2d 275, 279 (Miss. 1993); Webb v. Jackson, 583 So.2d 946, 952 (Miss. 1991). As we noted in Morgan, the line between governmental and proprietary functions has been best drawn in Anderson v. Jackson Municipal Airport Authority, 419 So.2d 1010 (Miss. 1982). In Anderson, the Court explained:
The classifications are broad, very general, and the line between the two is quite frequently difficult to define. Nevertheless, there are certain activities which courts choose to call "governmental" for which no liability is imposed for wrongful or tortious conduct. These are activities or services which a municipality is required by state law to engage in and perform.
On the other hand, there are activities in which a municipal corporation engages, not required or imposed upon it by law, about which it is free to perform or not. Such activities the courts call "proprietary or corporate." This Court has judicially construed other permissible "public and governmental" activities to be "corporate or proprietary."
419 So.2d at 1014-1015 (emphasis added). The Anderson Court further enumerated those municipal activities which have been determined to be governmental as distinguished from proprietary functions.[3] In holding that the operation of a swimming pool was a proprietary function, the Court in Morgan resolved the dichotomy between governmental and proprietary functions by stating simply, "[p]roprietary activities are those which, while beneficial to the community and very important, are not vital to a City's functioning. (Zoo, football stadium)." Id. at 279.
In those few jurisdictions where courts have been asked to determine whether the operation of a garage and/or towing service for city vehicles is a governmental or proprietary function, the general rule is that it is a proprietary function:
It has been quite generally held in the cases which have arisen that the operation of a garage for the repair and maintenance of municipal vehicles is, regardless of the function the vehicles themselves may be engaged in, a proprietary function, such as will render the municipal corporation liable for injuries resulting from the operation, maintenance, or repair of vehicles by the employees of the garage.
Annotation, Operation of Garage for Maintenance and Repair of Municipal Vehicles as Governmental Function, 26 ALR2d 944, 945 *902 (1952) (emphasis added). See generally, Dallas v. City of St. Louis, 338 S.W.2d 39, 41 (Mo. 1960) (operation of garage for maintenance and repair of garbage trucks a proprietary function despite settled Missouri law that collection of garbage is a governmental function); Oklahoma City v. Foster, 118 Okla. 120, 247 P. 80 (1926) (operation of garage used to repair police cars and motorcycles "was in no manner governmental in its character, but was wholly corporate."); City of Houston v. Schilling, 150 Tex. 387, 392, 240 S.W.2d 1010, 1013 (1951) (although collection of garbage a governmental function, operation of garage to repair garbage trucks "not a governmental function nor a necessary element of a governmental function so as to relieve the city from liability for the negligent acts of those employed in such garage.").
While no state law imposes a duty upon the City to operate its own garage or towing service and the operation of a garage and/or towing service is more akin to those activities we acknowledged in Morgan and Anderson as being proprietary rather than governmental functions, the City asserts that these are governmental functions. It relies on White v. City of Tupelo, 462 So.2d 707 (Miss. 1984), and Jackson v. Smith, 309 So.2d 520 (Miss. 1975), to support its argument that the "retrieval of disabled vehicles for maintenance" is a governmental function. In the case sub judice, Thomas, a city garage employee, was returning to the garage in his tow truck after having pulled a police car out of the mud and back onto hard pavement. The record provides no evidence that Thomas was towing the police car at the time of the accident or, as the City suggests in its brief, that the vehicle was being retrieved for maintenance. Even if it were, it would be of no consequence.
In White, an accident occurred while the Captain of the Tupelo Fire Department was demonstrating a city fire truck to its new owner. Based on City of Hattiesburg v. Geigor, 118 Miss. 676, 79 So. 846 (1918), where it was held that moving horses and a fire engine from a temporary shed to regular quarters was part of the governmental function of "operating and maintaining" a fire department, and the absence of Mississippi cases holding that the sale of equipment is not a governmental function, the Court in White decided that disposal of city equipment was a governmental function and thus, the City of Tupelo was immune from liability. White, 462 So.2d at 709. Similarly, in Jackson v. Smith, where a child was killed by a police car driven by a McComb policeman who was driving the mechanic who had been diagnosing the vehicle's engine problems back to his garage, this Court found, solely based on Geigor, that the City of McComb was not liable since the "establishment and maintenance of a police department is a governmental function." Jackson, 309 So.2d at 523.
In contrast to White and Jackson, neither a fire truck nor a police car were involved in the case sub judice, nor was the tow truck driven by an officer of either department. More to the point, the idea that operation of a garage and towing service for city vehicles is a governmental function is contrary to the distinctions between governmental and proprietary functions set forth in Morgan and Anderson. No state law requires the establishment of city garages and towing services. While the maintenance and upkeep of a city's emergency vehicles is vital, the operation of a city garage to do so is not. The City is free to operate its own garages or to enter into service contracts with private mechanics and towing services.
Following the distinctions between proprietary and governmental functions we drew in Morgan and Anderson, as well as the case law of other jurisdictions, which holds the operation of a city garage to be a proprietary function, we affirm the special circuit judge's finding that operation of a service garage and tow truck is a proprietary function and the City of Jackson is not immune from liability.

III.
The jury awarded Breland Hilburn $300,000.00 for the loss of his father. The City asserts that the verdict exceeded the weight of the evidence presented. Hilburn put on proof of funeral expenses in the amount of $4,631.00, property damage in the amount $2,575.00, and medical expenses of $1767.02. *903 Economist Gerald Lee testified that the net present cash value of the elder Hilburn's lost earnings was $66,311.00.
When reviewing a jury award for damages, this Court has held that such awards "are not merely advisory and will not under the general rule be set aside unless so unreasonable in amount as to strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous." Rodgers v. Pascagoula Public School District, 611 So.2d 942, 945 (Miss. 1992). As we further reiterated in Sperry-New Holland v. Prestage, 617 So.2d 248 (Miss. 1993), "[o]ur general rule [is] that great deference must be given to the fact finder, and our ventures into the jury's province are greatly restricted." Id. at 263, quoting Detroit Marine Engineering v. McRee, 510 So.2d 462, 471 (Miss. 1987).
A wrongful death action is intended to compensate the heirs for the loss of the decedent. Gentry v. Wallace, 606 So.2d 1117, 1121 (Miss. 1992). Compensation is not limited to actual damages and lost wages, but extends to pain and suffering of the deceased and his loss of enjoyment of life as well as the loss of his companionship and society. McGowan v. Estate of Wright, 524 So.2d 308, 311 (Miss. 1988) (construing the language of Miss. Code Ann. Sec. 11-7-13 (Supp. 1984)). Hilburn testified that as an only child, he and his father remained close, staying in almost constant contact through visits and telephone calls. The elder Hilburn visited his three grandchildren three or four times a week. He contributed financially to the family's support as well as with produce from his extensive gardens. Hilburn also testified that his father was in a considerable amount of pain during the six days between the accident and his death.
In Motorola Communications and Electronics, Inc. v. Wilkerson, 555 So.2d 713 (Miss. 1989), this Court upheld the award of $150,000.00 to the daughter of an eighty-five year old man who was struck and killed while walking across Highway 80. Concluding that the conscience of the Court was not shocked by the amount, we noted:
With regard to the loss of society and companionship, it is noted that according to the life tables in effect at the time of the decedent's death, he had at least 7.3 years of life remaining. Appellee was decedent's only child. They were extremely close and the evidence showed they communicated daily, either personally or by telephone. Decedent was accustomed to performing odds and ends for his daughter on a fairly regular basis.
Where, at first blush, a jury verdict in the amount of $150,000 for the wrongful death of an 85-year-old man may appear on the high side, we have examined the entire record thoroughly and hold that this amount comports with the evidence and with the prior health, the severe pain, suffering and mental anguish the decedent experienced, appellee's (an only child) loss of society and companionship and the medical expenses.
Wilkerson, 555 So.2d at 724. Adjusted for inflation and allowing for the elder Hilburn's relative youth (he had turned seventy-five the week before the accident) and life expectancy of nine years, the award of $300,000.00 does not seem outrageous, or even unreasonable. See also Stanford v. Leaf River Forest Products, 661 F. Supp. 678 (S.D.Miss. 1986), aff'd 817 F.2d 754 (5th Cir.1987) ($1,036,349.00 awarded to heirs of forty-three-year-old decedent with lost earnings of $172,049.00); Sperry-New Holland v. Prestage, 617 So.2d 248 (Miss. 1993) (affirmed award of $883,250.00 for loss of lower leg). Accordingly, we do not find the award of damages so outrageous as to warrant reversal of the jury's decision.

IV.
We note that on September 30, 1991, two weeks before the scheduled trial date, the City filed a motion for a continuance. It sought an additional sixty days for trial preparation, asserting that its original attorney had resigned and the new attorney had not been assigned to the case until September. Matthew Moore, the attorney originally assigned to the case, had resigned from the City Attorney's office in April, 1991 to enter private practice. However, he had continued to represent the City in this and other cases on an hourly basis through much of the month of September. He was then advised *904 that he would no longer be involved with the case. The City's motion for continuance was neither preceded nor accompanied by a motion for withdrawal or substitution of counsel. Only at the request of the special circuit court judge did Matthew Moore, the original attorney, offer an ore tenus motion to withdraw from the case and to substitute Craig Brasfield and Leyser Morris as counsel of record. Asserting that its attorneys did not have adequate time to prepare the case, the City now challenges the special circuit court's refusal to grant the requested continuance.
"The granting of a continuance is largely a matter within the sound discretion of the trial court and unless manifest injustice appears to have resulted from a denial, this Court should not reverse." Hatcher v. Fleeman, 617 So.2d 634, 639 (Miss. 1993). We further have held that the trial court may exercise "reasonable latitude" in the setting and continuance of cases. Watts v. Pennington, 598 So.2d 1308, 1312 (Miss. 1992). There being no showing that the City suffered any injustice from the special circuit court judge's denial of its motion for continuance, we find no abuse of discretion.

V.
In conclusion, we find that the City's operation of a service garage and towing service is a proprietary function and thus, the defense of sovereign immunity was not available in this case. Moreover, the jury's award of $300,000.00 is not unconscionable and the special circuit judge did not abuse his discretion in refusing to grant a continuance. Accordingly, we affirm the jury verdict and the orders of the special circuit judge granting Hilburn's motion for summary judgment on the issue of sovereign immunity and denying the City's motion for a continuance.
JUDGMENT AFFIRMED.
HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, PITTMAN, BANKS, JAMES L. ROBERTS, Jr., and SMITH, JJ., concur.
DAN M. LEE, P.J., concurs in result only.
NOTES
[1] Disputed issues of negligence were resolved by the jury and are not now before this Court.
[2] The City was unable to produce Thomas for trial and introduced his deposition in lieu of testimony.
[3] The Anderson Court found that the following had been held to be governmental functions:

the decision whether to place traffic control devices at an intersection; establishment and regulation of schools, hospitals, poorhouses, fire departments, police departments, jails, workhouses, and police stations; the adoption and enforcement of ordinances and regulations for the prevention of the destruction of property by fire and flood, and the manner and the character of the construction of the buildings.
Morgan, 627 So.2d at 279 n. 2, quoting Anderson, 419 So.2d at 1014 n. 1 (citations omitted).
The Anderson Court listed the following as having been held to be proprietary functions: The operation of a city dump; the construction and maintenance of sewage outlets to and from buildings; the maintenance and repairing of streets; the construction and maintenance of sidewalks; the operation and management of an electrical power plant by a municipality; the construction of a nuisance, such as a hog pond, close to the plaintiff's residence; the operation by the city of a fair, baseball park, or football stadium; the operation of a fire hydrant; the hauling of dirt and trash by the city; the operation and maintenance of a zoo; the creation of a dangerous situation regarding trees near sidewalks, streets or neutral areas; the operation of river landings for ingress and egress by boats; the construction and maintenance of a bridge over a gulley or ditch near a sidewalk or street; the construction and maintenance of a drain to provide for controlling rainfall; the offensive odors from a negligently operated sewage system; the supervision of the construction of a wall of a building not owned by the city; the overhead traffic control signal lights and stop signs at intersection[s].
Morgan, 627 So.2d at 279 n. 3, quoting Anderson, 419 So.2d at 1014-1015 n. 2 (citations omitted).