# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 97-CA-00359-SCT

*THE CITY OF JACKSON, MISSISSIPPI*

*v.*

*PHILLIP BROWN, INDIVIDUALLY, AND ON BEHALF OF THE HEIRS OF WILLIE BROWN, DECEASED*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/10/97 |
| TRIAL JUDGE: | HON. JAMES E. GRAVES, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ROMAINE L. RICHARDS |
| ATTORNEYS FOR APPELLEE: | WILLIAM P. FEATHERSTON, JR. |
| | SUZANNE KEYS |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND RENDERED - 12/31/98 |
| MOTION FOR REHEARING FILED: | 1/14/99 |
| MANDATE ISSUED: | 4/12/99 |

**BEFORE PRATHER, C.J., ROBERTS AND MILLS, JJ.**

**ROBERTS, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. Phillip Brown filed suit individually, and on behalf of the heirs of Willie Brown, deceased (hereinafter "Brown"), on March 16, 1994, against the City of Jackson (hereinafter "City"), Mississippi as a result of the death of his father, Willie Brown, by drowning in a tributary to a town creek located in the vicinity of Pleasant Avenue in the City of Jackson, Mississippi. The date of the decedent's death was May 1, 1993.

¶2. The City of Jackson filed its Motion for Dismissal or in the Alternative for Summary Judgment. The court entered its order granting partial summary judgment to the defendant for the negligence of the personnel of the City of Jackson Fire Department and Police Department for negligently failing to rescue the decedent, Willie Brown. The court further found that the maintenance of streets was a proprietary function and refused to dismiss as to the City of Jackson on the issue of street maintenance, including placement of guardrails. Thereafter, and prior to trial, the City reurged its Motion to Reconsider the Motion to Dismiss or

in the Alternative for Summary Judgment once again raising the issue of sovereign immunity. The court overruled the Motion to Reconsider the sovereign immunity issue.

¶3. The case proceded to be tried to a jury commencing January 6, 1997. At the close of Brown's case, the City's Motion for a Directed Verdict which re-urged the sovereign immunity issue was denied.

¶4. At the conclusion of the trial, the jury found in favor of Brown and returned its verdict with judgment entered thereon in the amount of $1,312,500.00. Thereafter, the City filed its Motion J.N.O.V. or for a new trial. The court denied said motions. The City then filed its Motion for Relief of Judgment which the court later denied. The City filed its Notice of Appeal raising the following issues:

**I. WHETHER THE CITY OF JACKSON IS IMMUNE FROM THE PRESENT ACTION?**

**II. WHETHER THE JURY INSTRUCTIONS AS GIVEN WERE CONFUSING, DID NOT REFLECT THE LAW, AND WERE HIGHLY PREJUDICIAL TO THE CITY, THUS CAUSING AN INJUSTICE?**

**III. WHETHER THE COURT ERRED IN NOT ALLOWING THE CORONER'S REPORT TO BE INTRODUCED UNDER RULE 803 OF THE MISSISSIPPI RULES OF EVIDENCE?**

**IV. WHETHER THE COURT ERRED IN EXCLUDING THE TESTIMONY OF MIKE WEAVER, TOXICOLOGIST?**

**V. WHETHER THE COURT ERRED IN ALLOWING TESTIMONY REGARDING THE COST OF CONSTRUCTION OF A GUARDRAIL OVER THE OBJECTION OF THE CITY?**

**VI. WHETHER THE AMOUNT OF THE DAMAGE AWARD WAS SO EXCESSIVE AS TO SHOCK THE CONSCIENCE AND REFLECT A BIAS AND PREJUDICE ON THE PART OF THE JURY AGAINST THE CITY?**

**VII. WHETHER THE COURT ERRED IN ALLOWING A JUDGMENT IN EXCESS OF THE DEMAND TO BE ENTERED?**

**VIII. WHETHER THE COURT ERRED IN ALLOWING BROWN TO AMEND THEIR COMPLAINT AFTER THE JURY VERDICT AND NOTICE OF APPEAL TO THE MISSISSIPPI SUPREME COURT HAD BEEN FILED AND THE TRANSCRIPT FORWARDED?**

¶5. After the Notice of Appeal had been filed, Brown filed its Motion for Leave to Amend Complaint to Conform to the Evidence. The court granted the Motion to Amend Judgment. These motions were heard after the record had been prepared and filed with this court. The City filed its motion to supplement the record to include the orders overruling the Motion for Relief of Judgment as well as the order granting Brown's Motion to Amend the Pleadings to Conform with the Evidence.

## STATEMENT OF THE FACTS

¶6. May 1, 1993, the decedent, Willie Brown fell into a creek in the 1400 block of Pleasant Avenue in the

City of Jackson, Mississippi. The decedent had been visiting at a local grocery store on that day and had consumed some beer. The decedent proceeded to leave the store with a box of trash to throw into a creek on the opposite side of Pleasant Avenue from the store. As the decedent was throwing the trash into the creek he fell in the water course which was filled to near capacity as a result of a large amount of rainfall on that date.

¶7. There was conflicting evidence as to whether the decedent was intoxicated on the day of the incident. The body of Willie Brown had been in the water of Town Creek from May 1st until May 3rd, 1993. Mike Weaver, a toxicologist employed by the Mississippi Crime Lab, testified that he performed a blood alcohol test on a blood sample extracted from the decedent which contained .29% ethyl alcohol. Mike Weaver also testified that a human body can produce ethyl alcohol as a result of decomposition in the range of .05% to .08%. Therefore, there was a factual dispute as to the true blood alcohol level of the decedent. The court excluded any testimony that Weaver would make as to what effect a .29% blood alcohol level would have on the decedent's motor functions and/or ability to make rational decision. This exclusion was due to the City's failure to designate Weaver as an expert in response to interrogatories propounded by Brown. In addition, the City withdrew the offer of Weaver as an expert and the court allowed him to testify as a fact witness on the blood alcohol test only.

¶8. There was testimony that Willie Brown had consumed a quantity of beer between 8:00 a.m. and 11:30 a.m., but there was no testimony from anyone that the decedent had consumed any alcohol between 11:30 a.m. and 7:00 p.m. when he fell into the creek. An eyewitness to Willie Brown's actions moments before he fell into the creek testified that the decedent's speech and balance were not impaired and the he was not drunk.

¶9. The City contended that Brown's argument that the placement of a guardrail is a government function was argumentative and not factual. Although a witness for the City testified that the AASHTO standards only applied to new construction and not street maintenance and repair, this testimony was disputed and contradicted and apparently the jury resolved the conflict in favor of Brown's case.

¶10. The Court also excluded the official Coroner's Report due to the fact that the report contained hearsay and was not within the exception to hearsay provided by the rules of evidence, and for the reason that the report was signed by the Hinds County Coroner rather than the witness who conducted the investigation.

¶11. The jury returned its verdict in the amount of $1, 312,500.00 after having found the decedent twenty-five percent (25%) contributorily negligent. A judgment was entered on this amount.

**DISCUSSION OF THE ISSUES**

### I. WHETHER THE CITY OF JACKSON IS IMMUNE FROM THE PRESENT ACTION?

¶12. The City asserts that the circuit court erred in denying its motions and in finding that the City was not entitled to immunity according to the Mississippi Tort Claims Act, and specifically, Miss. Code Ann. § 11-46-3, which was effective April 1, 1993, one month prior to the accident that is the subject of this litigation. Miss. Code Ann. reads as follows:

(1) The Legislature of the State of Mississippi finds and determines as a matter of public policy and does hereby declare, provide, enact and reenact that the "state" and its "political subdivision," as such

terms are defined in Section 11-46-1, are not now, have never been and shall not be liable, and are, always have been and shall continue to be immune from suit at law or in equity on account of any wrongful or tortious act or omission or breach of implied term or condition of any warranty or contract, including but not limited to libel, slander or defamation, by the state or its political subdivisions, or any such act, omission or breach by any employee of the state or its political subdivisions, notwithstanding that any such act, omission or breach constitutes or may be considered as the exercise or failure to exercise any duty, obligation or function of a governmental, proprietary, discretionary or ministerial nature and notwithstanding that such act, omission or breach may or may not arise out of any activity, transaction or service for which any fee, charge, cost or other consideration was received or expected to be received in exchange therefor.

Miss. Code Ann. §11-46-3(1) (Supp. 1998). Thus, the City believes that the legislature exempted all state entities from liability from April 1, 1993, until its waiver of sovereign immunity as to the State on July 1, 1993, and Municipalities on October 1, 1993.

¶13. The City is incorrect as to the applicable statute on sovereign immunity in effect at the time the present cause of action arose. The City quoted Subsection (1) of Miss. Code Ann. § 11-46-3. However, the City has failed to quote a very important part of the statute which was contained in Subsection (3) which read as follows:

> (3) The immunity recognized and reenacted unto this section shall not be applicable to an incorporated municipality for any wrongful or tortious act or omission by such municipality or any employee of such municipality that arises out of the exercise or failure to exercise any duty, obligation or function of a proprietary nature.

The above quoted Subsection (3) which exempted municipalities from sovereign immunity for actions or inactions of a proprietary nature was effective until October 1, 1993, and went into effect from and after passage on April 1, 1993. The present cause of action arose on May 1, 1993, when the decedent fell into a drainage ditch in the city of Jackson and drowned. Thus, the City is not automatically immune from liability, and it must be determined into which Subsection the City is categorized.

¶14. The City cites the case of *Gressett v. Newton Separate Municipal School District*, 697 So.2d 444 (Miss. 1997) in support of its argument that the City is immune from liability. However, *Gressett* is completely distinguishable from the present case in that Gressett involved a suit against the Newton County School District which this court held is a political subdivision of the State of Mississippi which does in fact enjoy sovereign immunity pursuant to Miss. Code Ann. §11-46-3(1). The case sub judice involves an action against a municipality which is exempted from sovereign immunity pursuant to Miss. Code Ann. § 11-46-3(3) if the function complained of is a proprietary one.

¶15. Therefore, the argument of the City that it is immune from liability depends on whether the placement of a guardrail between a street and a drainage ditch is a governmental or proprietary function. A city or municipality is immune from suit when the injury stems from the performance of a governmental function. However, the city does not enjoy such immunity when it is responsible for an injury arising from the performance of a proprietary function. *Morgan v. City of Ruleville*, 627 So.2d 275, 279 (Miss. 1993); *Webb v. Jackson*, 583 So.2d 946, 952 (Miss. 1991). This Court in *Anderson v. Jackson Municipal Airport Authority*, 419 So.2d 1010 (Miss. 1982), discussed, at length, the differences between governmental and proprietary functions:

The classifications are broad, very general, and the line between the two is quite frequently difficult to define. Nevertheless, there are certain activities which courts choose to call "governmental" for which no liability is imposed for wrongful or tortious conduct. These are activities or services which a municipality is required by state law to engage in and to perform. On the other hand, there are activities in which a municipal corporation engages, not required or imposed upon it by law, about which it is free to perform or not. Such activities the court call "proprietary or corporate". This Court has judicially construed other permissible " public and governmental" activities to be "corporate or proprietary."

*Anderson*, 419 So.2d at 1014-15.

¶16. The City has taken the position that the placement of a guardrail is a decision that must be made by a city. The City further asserts that such decisions have been declared by this Court to be governmental.

¶17. The City cites *King v. City of Jackson*, 667 So.2d 1315 (Miss. 1995) to support its contention. In the *King* case, the plaintiff proceeded around what was alleged to be a dangerous curve, and left the roadway and ran into an open concrete ditch. The plaintiff alleged in *King* that "the City of Jackson was negligent in the following respects: (1) failing to properly warn approaching motorists of the dangerous curve; (2) failing to provide adequate lighting in the area of the dangerous curve; (4) failing to provide an adequate shoulder at the site of the dangerous curve; (5) failing to warn approaching motorists of the open concrete ditch; (6) failing to provide adequate guards to prevent vehicles from driving into the open concrete ditch; (7) failing to provide adequate lighting at the site of the concrete ditch." *King*, 667 So.2d at 1317. This Court in following its prior decisions in *Nathaniel v. City of Moss Point*, 385 So.2d 599, 601 (Miss. 1980) and *Wall v. City of Gulfport*, 252 So.2d 891, 893 (Miss. 1971) affirmed that the City of Jackson was entitled to summary judgment as a matter of public policy, in that the decision as to whether to place traffic or warning signs is a governmental function, not proprietary and, therefore, the City was immune.

¶18. This Court stated in the case of *White v. City of Tupelo*, 462 So.2d 707 (Miss. 1984), that the design, maintenance and repair of streets is an example of proprietary or corporate functions to which immunity does not attach. *White v. City of Tupelo*, 462 So.2d at 708-709 (*citing Bishop v. City of Meridian*, 223 Miss. 703, 79 So.2d 221 (1955). Thus, a city or municipality may be held liable if the construction, maintenance or repair of streets is done negligently. *Nathaniel v. City of Moss Point*, 385 So.2d 599, 601 n. 1 (Miss. 1980). Contrary to the assertion of Brown, the placement of a guardrail between a street and a hazard is not a proprietary function of street construction and maintenance. Rather, the placement of a guardrail is a discretionary governmental decision- making function as in the case of a traffic control device or warning sign which this Court has recently held to be a governmental, or discretionary function entitled to the defense of sovereign immunity. *King*, 667 So.2d at 1316. Therefore, summary judgment should have been granted in favor of the City of Jackson. In light of the result of this issue, the other issues asserted by Brown do not merit discussion.

## CONCLUSION

¶19. The decision in this case to place a barricade cannot be distinguished from *King* and the other cases supporting the City's contention. The decision to place a barricade is not the same as street maintenance as Brown contends. Rather, the placing of a barricade is more akin to the placement of traffic or warning signs

and thus, is indeed governmental which immunizes the City of Jackson from liability. The circuit court erred in denying the City of Jackson's Motion for Summary Judgment, Motion to Reconsider Summary Judgment, and Motion for a Directed Verdict based on immunity pursuant to § 11-46-3. Therefore, this Court reverses the decision of the trial court and holds that Summary Judgment be granted and the case sub judice dismissed.

¶20. **REVERSED AND RENDERED.**

**PRATHER, C.J., PITTMAN, P.J., SMITH AND MILLS, JJ., CONCUR. BANKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J. McRAE, J., JOINS IN PART. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J. WALLER, J., NOT PARTICIPATING.**

### BANKS, JUSTICE, DISSENTING:

¶21. Because the majority relies on *King v. City of Jackson*, 667 So. 2d 1315 (Miss. 1995) to grant summary in favor of the City, I dissent. I believe the majority's decision stretches *King*, in which I dissented, and I would reiterate my dissent in the present decision.

¶22. In *King*, this Court concluded that the City's failure to warn of a dangerous condition was a governmental function, wrongly relying on the fact that installation of a traffic control device is a matter of governmental discretion. *See Wall v. City of Gulfport,* 252 So. 2d 891 (Miss. 1971). However, both King and the present case, which deals with the construction of a guardrail between the street and a drainage ditch, involve not traffic control but dangerous conditions for which proper precautions must be taken to prevent harm. The design, construction, and maintenance of streets and ditches are clearly proprietary functions. *See Thomas v. Hilburn*, 654 So. 2d 898 (Miss. 1995).

¶23. *King* was wrongly decided, and in my view, the present case exacerbates *King*. Therefore, I respectfully dissent.

**SULLIVAN, P.J., JOINS THIS OPINION. McRAE, J., JOINS IN PART.**

### McRAE, JUSTICE, DISSENTING:

¶24. I join Justice Banks' dissent and reiterate the points raised in my dissent to *King v. City of Jackson,* 667 So. 2d 1315 (Miss. 1995), upon which the majority bases today's decision. The majority incorrectly categorizes the City's decision of whether a guardrail should be placed between a street and a drainage ditch as a governmental function, akin to the placement of a traffic signal, rather than as a proprietary function connected with the design, maintenance and repair of streets. Accordingly, I dissent.

¶25. It is well-established that the design, maintenance and repair of streets and roads is a proprietary function for which no immunity may be claimed when a negligence claim arises. ***White v. City of Tupelo***, 462 So. 2d 707, 708-09 (Miss. 1984); ***Nathaniel v. City of Moss Point***, 385 So. 2d 599, 601 (Miss. 1980). Thus, "[a] municipality is under the duty to exercise reasonable care to keep its streets reasonably safe for those using them with reasonable care." ***City of Jackson v. Locklar***, 431 So. 2d 475, 479 (Miss. 1983). The city must have actual or constructive knowledge of the unusually hazardous situation. ***Id.*** at 480. Our sister jurisdiction of Lousiana, I believe, has taken a sounder approach that where a situation is inherently hazardous, a parish not only has the duty to maintain and repair streets, highways and canals, but to provide warning to all travelers regardless of whether it had knowledge of the condition, stating:

> A public body is held to know of the danger of an unmarked intersection, or a sharp curve, or a draw bridge, or, as in this case, a gate that raises and lowers automatically so as to block a canal used by boat operators. Likewise, the public authority must provide adequate warnings of unusual obstructions or perilous conditions so as to make the route reasonably safe for those traveling on it. . . . The governmental authority owes a duty to an inattentive traveler as well as to an attentive one. ***Molbert v. Toepfer***, 550 So. 2d 183 (La.1989).

***Faucheaux v. Terrebonne Consol. Gov't,*** 615 So. 2d 289, 293 (La. 1993).

¶26. Article 3, section 24 of the Mississippi Constitution of 1890 provides that all courts shall be open and "every person for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice shall be administered without sale, denial, or delay." No distinction is made between private and public tortfeasors. The Browns, therefore, should have their day in court.

¶27. Installing a guardrail between a street and a drainage ditch is part of maintaining a city street and thus is a proprietary function. Even assuming arguendo it is, as the majority, suggests, a governmental function, the City of Jackson enjoys no immunity. Pursuant to our decision in ***Presley,*** where we prospectively found that the language of Miss. Code Ann. § 11-46-3 was unconstitutional, there is a window between the date of that decision in December, 1992, and October, 1993, when the 1993 legislation became effective as to municipalities. Brown drowned in May, 1993. There was no immunity shielding the City of Jackson at that time. Accordingly, I dissent.

**SULLIVAN, P.J., JOINS THIS OPINION.**